WILLIAM D. WILKINS ET AL. v. CITY OF DETROIT ET AL.

*Repaving streets—Legality of paving assessments—Notice to bidders for paving contract—Documentary proofs—Deficiency in record.*

Under the paving system followed in Detroit, the contractor is not an indispensable party to a suit against the city to enjoin the enforcement of an assessment.

The city of Detroit has authority to repave streets at the expense of the adjacent property, where there is a necessity for repaving, and the method of procedure is the same as in other paving. No contract for paving can be made until the common council has referred the matter to the Board of Public Works, and received from that board the reports and information provided for in the Public Works Act, as decided in *Butler v. Detroit*, 43 Mich. 552. But an assessment will not be held void when this has been done substantially in accordance with the purposes of that act.

Notices to bidders must contain the substantial requisites of specifications, so that bidders can from such notices obtain the information necessary to enable them to prepare their bids.

Where the determination of the legality of paving assessments depends on documents, the court will not pass upon it without full proof of the

documents themselves. It will not accept the inferences and conclusions of parties or counsel, but will construe them for itself. *Am. Ins. Co. v. Reed*, 40 Mich. 622, followed.

Where a cause was heard on pleadings and stipulations which did not set out in terms documents necessary to be considered, the decree was vacated and the cause remanded for such further proceedings as should remedy the deficiencies.

Appeal from Superior Court of Detroit. Submitted April 15. Decided April 27.

BILL to vacate assessment. Defendants appeal. Reversed.

*Otto Kirchner* for complainants.

. City Attorney *F. A. Baker* for defendants.

CAMPBELL, J. The bill in this cause was filed by a number of lot-owners complaining of an assessment for repaving Jefferson avenue in Detroit. The case was heard on bill and answer, except as to some matters admitted by stipulation, and the decree below was in favor of complainants.

Among other objections to the bill was one that the contractors for the paving should have been made defendants. This objection, however, was waived by the stipulation to go at once to a hearing on terms agreed on, and unless the omission is absolutely fatal it need not be noticed. It does not occur to us that this is such an omission as renders the case defective in that sense. It was held in *Palmer v. Rich* 12 Mich. 414, that the omission was not such as to prejudice the suit. The practice has been usually to omit them, and under the peculiar system under which these assessments are made, it is very questionable how far the contractors have any rights which must not be worked out as to the lot-owners through city action entirely. There may be some convenience in bringing them in, but we do not think the present case can be held beyond remedy on account of their omission.

It is also insisted on behalf of complainants that there is no authority in the city to repave streets under the charter, and make the expense a burden on the lot-owners. It was

held by a majority of the court in *Sheley v. Detroit* 45 Mich. 431, that such authority might be lawfully granted, and it was there assumed on both sides that there had been an attempt to grant it.   By section 38 of chapter 8 of the charter as amended in 1873, (Laws 1873, Act 270,) it was provided that when the council orders a street to be "graded, or graded and paved, or repaved," it may contract for the work as therein provided; and this is followed by a series of sections regulating assessments.   It is true that no change is made in the language of these subsequent sections, and that while they refer to paving there is nothing said about repaving.   But the introduction of the word "repaved" as the only change in 1873, indicates, as we think, a purpose to make the whole range of sections on the subject applicable. It is true that sound policy should have placed some check on the power to repave without necessity.   But if the other provisions of the charter are faithfully carried out, that abuse will be reasonably restrained.   In such matters something must be left to the good faith of the public agencies. We think the power exists.

There are also some very strong averments of fraud in the bill, as perpetrated by the contractors, and at least winked at by the Board of Works, which by the stipulation are waived, so far as they relate to the performance of the contract.   So far as they refer to the method of obtaining it, the bill makes no plain averments, and while the method of advertising resorted to is calculated to furnish some facilities to dishonest combination, the record has not been so framed as to charge it, and we presume was not meant to be.

The case, therefore, must depend upon the regularity and formal correctness of the transactions.   The history of the business is in brief as follows:  Jefferson avenue had already been paved twice at the expense of the lot-owners.   On the second day of April, 1880, a number of proprietors and occupants holding land at different points along the line, petitioned the common council of Detroit to have Jefferson avenue repaved nearly its entire length, with cedar blocks in the main traveled part, and gutters and borders of stone.   This

petition the council referred to the Board of Public Works, who, on the 21st of May, 1880, made a report recommending the improvement, and stated that the pavement was about worn out and needed continual repairs. They recommended a pavement of cedar blocks in the center and eight feet of Medina stone on each side of the street.

Thereupon, on the same day, the council divided the work into three sections, and included the lands of complainants in a section between Beaubien street and the railroad bridge, directing a pavement seventy feet wide. Upon receiving a report which the city engineer was directed to prepare and furnish, containing an estimate and statement of the quantity of grading and paving within the district, the Board of Public Works was directed to advertise five days for proposals. It was further provided that the contractors should receive three-fourths of their pay in accordance with the statute allowing bonds to be issued. It is not shown how far the board proceeded under these resolutions.

On the 22d of June, 1880, a number of persons petitioned the council to reconsider the resolutions already passed, and to order a pavement of cedar blocks without stone borders or gutters. At this meeting the Board of Public Works, acting without any previous authority or request, sent in a set of specifications for paving with cedar blocks—as they stated— "in accordance with the expressed wish of the property owners on said avenue." This report came in simultaneously with the new petition.

The council then rescinded the old resolutions, approved these specifications, and adopted a new set of resolutions of the same tenor except as to the material, which was to be cedar blocks.

The Board of Public Works advertised for proposals, referring to plans and specifications on file, and not setting them out in the notice. On the 9th of July the Board reported that proposals had been received and rejected as excessive. The council then ordered the Board to re-advertise for three days. July 16 a report was made of the rejection of new proposals on the same ground, and the

Board recommended that the work be abandoned, unless contractors could be found to do it at a reasonable price. The mayor subsequently suggested a further advertisement, and a delay of a year if this should not be successful. The council on July 23d adopted a resolution directing a re-advertisement for five days. The Board thereafter reported William J. McGonegal as lowest bidder, and recommended that a contract be awarded him, which was done in due course.

The subsequent proceedings alleging frauds and defaults are for the purposes of this hearing waived.

The objections chiefly relied on are the omission of statutory requirements.

The failure to submit the proposed improvement to the Board of Public Works for estimates and recommendations would probably have brought this case within that of *Butler v. Detroit* 43 Mich. 552, if it had not been for the remarkable series of transactions which, sooner or later, brought about all of the statutory conditions. While it is difficult to understand how some of these steps were taken, yet it does, we think, appear substantially that the Board of Public Works understood and distinctly recommended the precise pavement contracted for, and the council had before it complete specifications. It also appears that before the final advertising the Board had twice laid before the council the bids for all the work as received, with their opinion that they were excessive, and a recommendation of postponement unless better terms could be made. This was certainly definite information as full as could probably have been given in any other way, and the subsequent action of the council was had in as full light as the statute requires. While all this was irregularly done, we are not prepared to say on this record that the mere irregularity should avoid the tax. We are bound to consider somewhat the manner in which these questions are presented, concerning which we shall make further remark presently.

It is also objected that the charter requires the publication of specifications, as well as the other requisites of a notice

to bidders. It declares that "no paving contract" (or other contract specified) shall be made until advertised proposals. and specifications therefor shall have been duly published in at least one daily newspaper published in said city, and for such period as the common council shall prescribe." The city ordinance, chap. 35, § 5, requires the Board of Public Works to advertise fifteen days in the official paper, unless. otherwise ordered.

The defence claims that the section in the Board of Public Works act, which declares that "the board shall advertise for proposals to execute the work according to plan and specifications" (§ 18), supersedes the charter. But we do not think it was the design of this section to repeal the charter and leave the Board to its own discretion. The two are parts of one scheme, and the ordinance shows this to be the understanding. In the present case the Board advertised for three days in one instance, and for five in others,. not of its own motion but because the council so directed.

This language is very clear, and we think it is in the same direction with much State and congressional legislation which requires notices for proposals to furnish bidders full knowledge of what they are to bid upon, without requiring a personal visit to any office where there may be difficulty, among many bidders, in consulting the one set of documents. conveniently, and where persons under bodily weakness. could not always consult them at all. It is to be borne in mind that this section applies to all contracts alike, and in some cases bidders may be numerous.

But it does not follow that such a notice is to contain all the verbiage which is often, and probably was here, set out. in a formal document called specifications. In a paving contract all the essentials to inform bidders might easily be contained in a very few lines.

But we meet on this record with a difficulty which interferes with this inquiry. In a suit the consequences of which are serious if an assessment is held bad, the court ought to have before it all the documents on which the cause depends, and determine from those just what has been done. This.

case is not before us on bill and answer in the ordinary way, but as to certain things depends on the stipulation which waives some facts, and establishes others. It is altogether probable that counsel may have given in their pleadings correct deductions from the action of the various bodies involved. But we feel that we may not fully understand the precise action taken, when neither bill nor answer undertakes to recite it at large, or to do more than state what it was in given particulars. We cannot properly accept the opinions of counsel or parties concerning the legal meaning of documents, which if read by ourselves would enable us to form our own conclusions, which might or might not be the same. *American Ins. Co. v. Reed* 40 Mich. 622. If this case had been at issue on pleadings and proofs, and the documents omitted, no decree could be safely made in a case involving such important interests until they should be produced.

We cannot properly, under these circumstances, express any views as to the probable questions that may arise on reading these documents. But it cannot escape notice that the necessity of the work, the sufficiency in time and manner of the notices, the action of bidders and of the authorities in accepting or rejecting bids, may all become involved in such a way that our present impressions from this record might be modified.

We think no decree should be rendered on this imperfect showing, but that the decree should be reversed, and the cause remanded with liberty to both parties to amend their pleadings if they choose, and for complainants to reply to the answer, and for proofs. Costs will not be given now to either party, but on a final hearing may be determined as shall be just. The record will be remanded accordingly.

The other Justices concurred.

Afterwards, at the June term, 1881, this case came before the Court upon a record not essentially different, and was submitted on briefs by the same counsel. Submitted June 15. Decided June 22.

MARSTON, C. J.   We have examined the record in this case and find nothing upon which a conclusion different from that arrived at when the case was here before can be based.

The decree of the court below must be affirmed with costs.

The other Justices concurred.