## No. 5779.

## C. W. BALDRIDGE *v.* A. F. PENLAND.

1. PRESUMPTION—JUDGMENT.—Under a statute that empowers a county commissioners court to fix the terms when such court should be held, it must be presumed that a judgment rendered by that court was rendered at a term fixed by the court, in the absence of a recital in the judgment that it was rendered at a regular term.

2. APPEAL BOND.—When the name of the principal who signs an appeal bond appears on the face of the bond above his signature thereto, and following it unfilled blanks are left for the names of the sureties, it can not be urged as an objection to the bond that under the signature thereto of the principal appear the names of parties whose names are not found in the body of the bond, and who are not referred to therein by name as sureties.

3. EVIDENCE—BOOKS OF ORIGINAL ENTRY.—Though a tradesman's books of original entry of charges against a customer are admissible in evidence, they are only admissible after it is shown, 1, that they contain a correct record of his business as it transpires, and that the original entries therein were made cotemporaneously with the transaction of the business which the entries evidence; 2, the entries must relate to the business for which the books are kept, and not to matters disconnected therewith; 3, they must show with reasonable certainty what article of trade was made the basis of the charge; 4, the book must be regular, and the entries free from suspicion of alteration; 5, if they be kept by the party offering them, he should make oath to their correctness, and should offer evidence sustaining his probity and fair dealing in his accounts with others.

4. SAME—FACT CASE.—See this case for facts under which it was held that an examined copy of entries in a lost book of original entries, kept by a saloon keeper, was not admissible in evidence in a proceeding to enforce collection for "drinks," "games," "balances," etc., against the estate of a dead customer.

APPEAL from Coleman. Tried below before the Hon. J. P. Hutchison.

The opinion states the case.

*Frank L. Snodgrass,* for appellant: That the appeal bond was not sufficient, he cited Revised Statutes, articles 2206, 2201; Catlin v. Ware, 9 Massachusetts, 218; Lufkin v. Curtis, 13 Massachusetts, 223.

That the book of assigned entries was not admissible under the evidence offered, he cited Werbiskie v. McManus, 31 Texas, 116; Burleson v. Goodman, 32 Texas, 229; Flato v. Brod, 37 Texas, 704; Burnham v. Chandler, 15 Texas, 441; Townsend v. Coleman, 20 Texas, 817; Love v. Doak, 5 Texas, 343.

He also cited Burleson v. Goodman, 22 Texas, 229; Werbiskie v. McManus, 31 Texas, 116; Kotwitz v. Wright, 37 Texas, 82.

No briefs for appellee are found in the papers of the case.

STAYTON, ASSOCIATE JUSTICE. The appellee presented to the administrator of the estate of Thomas Hays, deceased, a claim for two hundred and twelve dollars and eighty-five cents, which was by the administrator allowed. Before this claim was acted upon by the probate court the persons interested in the estate filed objection to its allowance; their objections were heard and the claim was allowed only for seventy-four dollars and fifteen cents. From the action of the probate court rejecting the residue of his claim, Penland appealed, and on hearing in the district court, the entire claim was allowed. There was a motion filed in the district court to dismiss the appeal on the ground that the transcript did not show that there had been a judgment rendered in the county court, and on the ground that the appeal bond was not sufficient.

The judgment of the county court was regular in form, but it is contended that the transcript does not show that it was rendered at a regular term of the court. The transcript shows that the judgment was entered on May 6, 1885. Presumptions are to be indulged that the proceedings of courts are regular and in accordance with law, in the absence of proof to the contrary, and there is nothing in the record before us tending to show that the judgment was not rendered at a regular term of the county court. The county commissioners court had the power to fix the times when the court should be held, and it is to be presumed that it was held at the time fixed. (Gen. Laws, 1884, page 36; Gen. Laws, 1885, page 53.)

The objection to the appeal bond is that the names of the sureties do not appear in the body of the bond, and that it does not appear in the face of the bond that the persons who signed as sureties, so intended to be bound. The name of the principal appears in the face of the bond, and a blank was left for the names of the sureties who did sign it, from which it appears that all

the persons who signed it, except the named principal, signed as sureties. This was sufficient.

The account made the basis of appellee's claim was found to have been taken from his books kept as a retail dealer in liquors and keeper of a billiard saloon. Many of the charges are "To bar for billiards and drinks," without further specification of items. Some are "To billiards, games and drinks," without further specification, except to charge for the separate items of billiards, games and drinks, which are not further itemized. Others are for cash, one for one bushel of corn, and others for balances. The books of the appellee were shown to have been destroyed by fire, but it was shown that the copy of the account was correctly taken from the books before their destruction. The appellee made oath that his books were correctly kept, and two persons who had served in his establishment, each for a short time, stated that they made some of the entries in the books while so employed, and that the articles embraced in the charges in the books made by each of them, were delivered to Hays.

It was shown that the other entries in the books were in the handwriting of the appellee, but there was no evidence to show that the entries made by him were cotemporaneous with the transaction of the matters to which they relate, nor that any of the articles entered by him were ever delivered. On this evidence the account was objected to, on many grounds, among which were that the items were not given, and on the further ground that sufficient proof had not been made to authorize the admission of the books had they been produced.

Tradesmen's books of original entries, made in the ordinary course of their business, are admitted in evidence under certain restrictions, on account of the impracticability of making better proof of the sales and delivery of articles in the course of a business conducted from day to day between parties; in reference to which it is not usual to make or evidence contracts in the methods in which isolated transactions are ordinarily transacted or evidenced. Certain facts must be shown, however, before such books are admissible.

1. It must be shown that the books offered contain the daily record of the business of the person for whom they are kept, as it transpires from day to day between himself and customers, and that the entries therein are original entries, made cotemperaneously with the transaction of the business which

the entries are intended to evidence. 2. The entries must relate to the business carried on by the person for whom the books are kept, and not to matters in no way connected with that business. 3. The entries must be sufficient to show with reasonable certainty what thing is made the basis of the charge. 4. The book must be on its face regular, and the entries free from suspicion of alteration. 5. The person offering such books, if they be kept by himself, must ordinarily, if living, make oath to their correctness; and we think further, that he should be held to make proof tending to show his probity and fair dealing; as that the accounts of other persons kept in the same manner are usually found correct, or so treated by customers.

It is not shown in the case before us with any reasonable degree of clearness that the book, from which the copy filed in the county court was taken, was a record of the daily business between the appellee and his customers, except for a short time while kept by a clerk; nor is it shown that the entries made by appellee, which constitute the greater part of the account, were made at or near the time the several sales are claimed to have been made, nor that this was the usual course of the appellee.

Some of the entries evidently relate to matters in no way related to the business of the appellee. He was the keeper of a drinking saloon and billiard table or tables, and neither the lending of money, sale of corn, or "games," had relation to that business; and in so far, the books, if offered, could not have been received to prove an indebtedness based on such matters.

If the entries in the books be given the most liberal construction, it can not be told from them what things are made the basis of the several charges.

We may infer with reasonable certainty that the charges for "drinks" are for liquors sold to Hays in small quantities, and drank at the bar, at such intervals as he desired; and we may infer that the charges for "billiards" are for the use of billiard table and other things necessary to play the licensed game known by that name, and that for every game of billiards so played by Hays, a charge was made.

The greater number of the entries, however, do not show what the charge for "drinks" and "billiards" each were for a given day on which an entry was made. The entries are: "To Bar for Billiards and Drinks." There are charges for "games" in the same entries in which "billiards" are charged for; and it cer-

tainly ought to be made to appear what is meant by "games," and in such a connection, before books containing entries of such charges are received for the purpose of proving an indebtedness. In the connection used, the word "games" can not. mean the same as may be inferred to be meant by "billiards."

It is not shown that the business of the appellee, among other things, was to sell anything known as "games," or to perform any act which could be so termed; on the contrary, his business is shown to have been that of a liquor and cigar dealer and the keeper of a billiard table or tables, and his books would not be admissible to prove the sale of anything not connected with that business, any more than to evidence the sale of a horse by appellee to Hays.

Besides, entries to be admissible should not be uncertain or equivocal; and from them it should appear that the thing sold is a legitimate subject of commerce which prima facie has value; or that the act performed, and for which compensation is claimed, is one legal in its nature.

Some of the entries are for "balances" for "drinks," "cigars" and "billiards." These but involve the declaration that on account of general dealings, on the separate days named, in some way payment in part was made for the things had, and that there was a balance unpaid. This is, in effect, but a declaration of dealings and a settlement made by the creditor, the result of which he enters, instead of entering the facts on which he bases his adjustment of the account for the day. Some of the items testified to by the clerks seem not to have been entered at or about the time they are shown to have been delivered, and this tends to throw suspicion upon the correctness of the entries as well as to show that they are not declarations cotemperaneous with the daily dealings.

The books were not offered, and therefore their true condition and the manner in which they are kept, could not be ascertained by the court from an inspection of them. This is one of the most satisfactory means a court can have for determining whether the books are what they profess to be—a faithful record of each day's business. That copies taken from books correctly kept may be used, when for any reason the books can not be produced, seems to be very generally held, but when such evidence is offered it ought not to be received, unless the proof shows with all reasonable certainty, that the books were so kept as to render them admissible were they produced.

The testimony of the person who proposes to prove the contents of his books, that they were correctly kept, is not enough. There was no offer made to identify the things sold and entered in the books by the clerks who testified in the case; and in the absence of this we are of the opinion that the proof did not justify the admission of any part of the copy of the account. (1 Greenleaf, 118, 119; 1 Wharton's Law of Evidence, 681, 682, 683, 684; Underwood v. Parrott, 2 Texas, 172; Burnham v. Chandler, 15 Texas, 444; Burleson v. Goodman, 32 Texas, 229.)

For the error in admitting the copy of the account on which the appellee's claim is founded, the judgment of the district court will be reversed and the cause remanded.

*Reversed and remanded.*