THE STATE ex rel. WILLIS THARINGTON and wife SUSAN v. FENNER THARINGTON and R. O. PURNELL, Ex'r of Willie Winston.*

*Guardian and Ward—Husband and Wife—Reference.*

1. All the evidence taken by a referee should accompany his report, to the end that it may be considered by the Court in reviewing his findings.

2. A guardian will not be permitted to use more than the accruing profits of his ward's estate in the maintenance and education of the ward, except with the sanction of the Court, or in extreme cases of urgent necessity.

3. Where a portion of the fund due the ward was from the proceeds of the sale of lands in 1859, and she married shortly thereafter and attained full age in 1861 ; *Held*, that the interest and profits accruing thereon after marriage belonged to the husband as tenant by the courtesy, and the payment to him by the guardian was proper.

4. Where it appeared that there was a balance due a ward in 1862, in the hands of an administrator ; that the ward was of age and was married ; that there was no suggestion of the insolvency of the administrator, though he afterwards became insolvent by the results of the war ; *Held*, that under the peculiar circumstances

---

*DAVIS, J., having been of counsel, did not sit upon the hearing of this case.

the guardian was not liable for more than nominal damages for failure to collect from the administrator.

5. *It seems* that the husband and co-plaintiff of a ward will be required, in an action against a guardian for a settlement, to account to the latter for any payments made to him for his wife, though they were such for which the wife may not be chargeable.

This is a CIVIL ACTION; which was tried upon exceptions to referee's report, before *Merrimon, J.,* at April Term, 1887, of Franklin Superior Court.

Joshua Paschall died in the year 1856, and in December administration on his estate was granted to Robert Paschall.

The intestate left real and personal estate, and among his other heirs at law and distributees the relator Susan, a daughter being an infant; the defendant Fenner Tharington was at September Term, 1858, of the County Court of Franklin appointed her guardian, and entered into the bond with several sureties, of whom the testator of the defendant R. C. Purnell was one, upon which the present action is brought for an account and delivery over of the trust estate. The *feme* plaintiff intermarried with the other plaintiff on December 25th, 1859, and attained full age in 1861.

The complaint and answer having been filed at January Term, 1883, the cause was referred to B. B. Massenburg to take and state an account of the administration of the trust estate in the hands of the guardian, and for which he is liable.

The referee accordingly made his report setting out the admitted facts already cited, and finding a balance due the *feme* relator at that date of seven hundred, seventy-six dollars and sixty-four cents. It appears that the administrator Robert was indulged by the Court in filing his final account from time to time, until early in 1862, when it was rendered and showed to be in his hands $4,482.45, less commissions, $293, for distribution among the eight children of the intestate. The relators filed no exceptions to the report of the

referee, but moved to confirm the same, while the defendants did except, and thereupon the relators moved a recommittal of the report to the referee, to the end that he might report the evidence omitted, and hear further proofs, and, this being allowed, the defendants further except to this ruling and reserve the exception upon a future appeal.

Upon the coming in of the second report of the referee, in which he makes no change in the account, the relators filed exceptions as follows:

1. For that the referee does not make a separate account of the money derived from the sale of the ward's real estate. They insist that this should have been done and that there should be no disbursement allowed as against this fund, except the commissions to the guardian on his receipts.

2. That the referee allows the guardian credit for payments made to J. A. Henley and C. C. Blacknot when there is no evidence that the accounts were owing by the guardian or that they were for proper and necessary articles; that they exceed largely the interest and profits of the ward's estate, and as the further ground that these payments were made by the guardian after the marriage of the relator Susan to the other relator, and he was not authorized by either of said relators to pay said debts.

3. That the referee allowed the guardian credit for $304.44 for board of the relator on insufficient and incompetent evidence, it being allowed on the evidence of Fenner Tharington alone, the relators claiming that Susan lived in the family of the guardian who was her brother-in-law, for a while preceding her marriage; that she went there upon his invitation, and while there her services were worth as much as her board, and that no charge was made against her by Fenner Tharington on that account until after the commencement of this action.

4. That the referee has allowed disbursements in excess of the interest and profits of the ward's estate.

5. That the referee has allowed the guardian. $152.44 commissions.

6. That he has not charged the guardian with $23 received for his ward from sales of wheat and charged by him in his account filed in 1858.

The defendants also filed exceptions as follows:

1. That the referee admitted as evidence and acted upon the note executed December 31, 1856, by Fenner Tharington and W. J. Winston to Robert L. Paschall, administrator of Joshua Paschall, for $930.00, to the introduction of which the defendant objected upon the ground that it was incompetent, irrelevant, and had nothing to do with the matter in controversy.

2. To the finding that Fenner Tharington is largely indebted to the relator Willis Tharington as agent, upon the ground that said finding is not warranted by the evidence; on the contrary the evidence shows that the said Willis Tharington was largely indebted to the defendant Fenner Tharington.

3. The defendant excepts to the finding of the referee that Fenner Tharington is indebted on account to the relator Susan in the sum of $523.58, with interest from November Term, 1862, of the County Court of Franklin, it being the amount due his ward as shown by the final settlement of account of Robert Paschall, administrator of Joshua Paschall, and this exception is upon the following grounds:

The referee finds, and the record shows, that Robert Paschall, administrator of Joshua Paschall, was allowed by the Court, from time to time, to make a settlement of his account as administrator till March Term, 1862, of the County Court of Franklin, when the settlement of said accounts was had and his final account filed and approved, showing a balance in his hands, after paying the debts of the estate and the cost of administration, of $4,482.45, less $293.00 commissions allowed him. The evidence shows, and the referee finds the

fact, that the relators intermarried on December 25, 1859, and that relator Susan became of age in 1861, and these defendants say that the guardianship of defendant Fenner Tharington having ceased, he was in no way liable for the distributive share of the personal property due to relator Susan in the hands of the administrator, R. L. Paschall, at the March Term, 1862, of the County Court of Franklin; that no portion of said distributive share came into his hands as guardian.

4. The referee fails to credit the defendant Fenner Tharington with $67.65, paid J. R. Glenn for the relator Willis in 1869.

The case being heard upon the exceptions and report, the Court allowed exception 4 of the plaintiffs, and overruled exceptions 1, 2, 3, 5 and 6, to which ruling, allowing exception 4, the defendants excepted. The Court further gave judgment overruling the exceptions 1, 2, 3 and 4 of the defendants, to which the defendants also excepted.

It appearing from the facts that the guardian had expended more money on behalf of the relator Susan than the income of the estate, the defendants insisted that the money so expended was spent for the actual necessities of the ward, but the guardian had obtained no order of Court allowing him to infringe upon the *corpus* of the estate. His Honor ruled that the guardian could not be allowed for these expenditures on a settlement with his ward, to which the defendants excepted.

There was judgment for the plaintiff, and the defendants appealed.

*Mr. C. M. Cook*, for the plaintiff.
*Mr. N. Y. Gully*, for the defendants.

SMITH, C. J., (after stating the case). It was entirely proper that all the evidence before the referee should be before the

Court in determining upon his findings.   There is no cause furnished to the defendants for complaint of the action of the Judge in re-committing the report, and it is sustained.

It is a well settled principle that in the management of the trust estate committed to the guardian, he will not be allowed to use more than the accruing profits in the maintenance and education of his ward, except with the sanction of the Court, or in extreme cases and of urgent necessity· The law is so explicitly declared by the Court, RUFFIN, C. J., delivering the opinion, in *Long* v. *Norcum*, 2 Ired. Eq., 354, and so universally accepted and acted on since, that we deem it needless to look elsewhere for precedent or authority.

The Court say that while it is not an inexorable rule to refuse to allow expenditures that encroach upon the principal estate, unless the previous authority to do so has been given by the Chancellor, so as to admit of no exceptions, as he has often taken part of the capital for the present benefit of the ward, and in cases where such sanction, if asked in advance, would be unhesitatingly given, sustain such expenditure when made under the circumstances by the guardian acting without permission.   And this may be done when, in the language of the Court, " from the possession of the property the infant cannot be entitled to maintenance as a pauper, and from mental imbecility or want of bodily health or strength he cannot be maintained from the profits of his property, nor put out apprentice and maintained by his master.   In such a case, while there is any part of the estate, it must be used to keep the unfortunate infant alive."

In that case the property consisted of a single slave worth, perhaps, $300, and during the guardianship others were born until their aggregate value was nearly $1,500, and the principal was not only not diminished by the disbursement, but largely augmented in value, so that if the increase be considered, there was in fact no encroachment upon the principal.

There are no such necessities shown in the present case, and the general rule must prevail. It may be that an investment in the education and training of the infant for the duties and pursuits of mature life would be, and generally it is, far more valuable to him than the money thus expended would be if retained and paid him after arrival at age, but until the General Assembly shall otherwise provide, the law must be, enforced as it has come down from the past, and infants must, beyond income, make their own struggles to acquire knowledge, or their guardian must expend their moneys, and in the words of the opinion, "*depend on the sense of honor and justice of the ward and his living to come of age.*"

In this connection, however, it may be observed that the proceeds of the sale of land in the distribution among the tenants is principal, and the accruing profits or interest thereon could be used in the support of the ward up to the time of her marriage, and that, thereafter arising, would belong to the husband as tenant by the courtesy, and, if received by him, could not constitute a claim against the guardian.

We are next to consider the matters embraced in the overruled exceptions of the defendant to the account.

The first and second of defendant's exceptions are overruled, the irrelevancy of the objectionable testimony, not having so far as we can see any misleading tendency upon the'mind of the referee, and the other too vague in terms. *Currie* v. *McNeill,*. 83 N. C., 176; *Morrison* v. *Baker*, 81 N. C., 76.

The third exception to the report is that the guardian is charged with the entire amount of the *feme* relator's distributive share in her father's estate, when it never went into his hands.

The ground of this exception is that no final account was filed by the administrator until 1862, more than two years

after marriage, when the fund, under the law then in force, became the property of the husband on his reducing it to possessions, and that the loss from insolvency is the result of his neglect and delay in collecting and not that of the guardian, and this on the principle enunciated in *State* v. *Skinner*, 3 Ired., 564.

This case decides that the mere neglect of a collecting officer to collect a solvent debt—it remaining good and no actual loss sustained by reason of the delay, such as the intervention of the statute of limitations and the like—until the making the change by statute. Rev. Code, Ch. 78, § 3, did not charge him with the debt, but only with nominal damages. See also *Willey* v. *Eure*, 8 Jones, 320.

Again, while it does not distinctly appear in the report that Robert, the administrator, was entirely solvent when his final account was rendered and the debt could have been collected, it seems to have been so assumed by the referee and that insolvency afterwards supervened in consequence of the general wreck of property brought about by the war; and while the plaintiff Willis, by his inaction, is quite as blamable for the loss as the guardian, it may be that letting the indebtedness rest upon the security of the administration bond, seemed to both as safe a course of action as collecting the money would have been, and the general destruction of property and especially of the currency in use that followed, seems to justify what was done, or rather left undone. We do not think the defendant should be held liable for more than nominal damages for the imputed neglect to have a settlement with the administrator, and especially in view of the subsequent course of the husband in letting the debt remain, the contrary of which would be to make the guardian an insurer or guarantor.

The last exception, in view of what is said, becomes of no importance in the result.

The guardian is charged with the money derived from the sale of the land, and interest thereon. The interest is income and should be applied to the disbursements and charges for the ward's support, and if consumed thereby, the guardian is not chargeable therefor. And so since the marriage and during the husband's life, he, as tenant by the courtesy, is entitled to the accrued interest, his wife only to the unimpaired principle at his death.

The referee finds that in general terms the defendant Fenner is personally indebted to the relator Willis, and then very properly holds, that as the action is upon the guardian bond, these personal accounts between them are outside the reference, and he disregards them.

The defendant Fenner in his answer, says he never received any of his ward's personal estate, and that the money derived from the land was expended in part for the *feme* relator, and the residue for her husband, and that to this extent he is primarily liable in exoneration of himself, and that he is solvent.

The facts in reference to this matter are not before us in the report, and to enable us to pass on the question, ought to be ascertained. If it be true, it would not relieve the guardian from the consequences of his mal-administration of the trust, but to avoid another suit, this liability, if incurred by said Willis, should be adjusted in the action.

The liability of a husband to account to the heirs at law of his deceased wife for a fund received by him from a sale of her land is decided in the case of *Scull* v. *Jernigan,* 2 Dev. & Bat. Eq., 144. This inquiry may be determined upon a re-reference, rendered necessary in reforming the account according to this opinion.

To this end the cause is remanded and judgment reversed.

Error.