DUFFY v. WILLIAMS.

(Filed October 20, 1903.)

1. GUARDIAN AND WARD—*Expenditures—Clerks of Courts—The Code, secs. 1566-1568.*

A court of equity may allow a guardian credit for money necessarily expended in the education of the ward, though the amount exceeded the income and was made without the permission of the clerk of the court.

2. GUARDIAN AND WARD—*References—The Code, sec. 1590—Acts 1891, ch. 83—Legal Conclusions.*

A finding by a referee that a guardian rented the lands of the ward privately, and that the interest of the ward did not require a public rental thereof, is a conclusion of law. The referee should have found whether any injury came to the ward by the private rental.

ACTION by Rodolph Duffy, Solicitor, on behalf of Annie R. Williams against W. H. Williams, heard by Judge *H. R. Bryan,* at December Term, 1902, of the Superior Court of DUPLIN County. From a judgment for the defendant the plaintiff appealed.

*Stevens, Beasley & Weeks* and *Faison & Grady,* for the plaintiff.
*Rountree & Carr* and *W. T. Dortch,* for the defendant.

MONTGOMERY, J. The referee found as a fact that the guardian, for the maintenance of his wards, had expended, without an order of Court, a greater amount than the income of their estate, but that the expenditures were reasonable and necessary, and that as a matter of law he should be allowed in his settlement with the wards such amount as he had paid out of the capital of the estate. The affirming of

these findings by his Honor and the defendant's exception thereto constitute the most serious question raised by the appeal.

The defendant, W. H. Williams, Jr., in 1888, was appointed and qualified as guardian of James M., Florence H., Annie R., John E. and Stella Williams, infant children of J. M. Williams, his deceased brother. The evidence tends to show that the real estate of the wards was worth about $14,000, and 'that the guardian received about $5,000 in money belonging to the estate; that the Williams family was a most respectable one, was possessed of considerable property and of good social position; that the oldest child at the time of the appointment of the guardian was about twelve years of age, and the youngest between three and four; that through about ten years of the guardianship the wards were kept in the home of their uncle, the guardian, and received his care and attention as well as that of his wife, and were at the close of his guardianship well reared, of good manners and fair educational advantages. That part of the *corpus* of the estate which consisted of money, $5,000, had been used by the guardian in those expenditures.

We have numerous decisions of our Court, from that of *Long v. Norcom*, 37 N. C., 354, down to and including that of *Tharington v. Tharington*, 99 N. C., 118, in which it is laid down as a *general rule* that expenditures by a guardian of a larger amount of the ward's estate than the income arising therefrom for the maintenance and education of the wards will not be allowed by the Courts; and that the Courts will show less favor to the guardian who has already made such expenditures of his own before he has asked the authority of the Court to do so. But it has never been held that these rules are so hard and fast as to admit of no exceptions. The act of 1762, ch. 62, on the subject of Guardian and Ward, in its 25th section, contains a reservation in the court of equity

of their former jurisdiction in matters and things relating to orphans and their estates; and in *Long v. Norcom, supra,* it is said "the County Court may not be authorized under the act of 1762 to do more than apply the profits of one year to the deficit of a preceding year; but the court of equity has power—though it may be seldom willing to exercise it—to take capital itself and apply it for maintenance, either future or past." The powers which the court of equity then had and exercised are now conferred upon the Clerk of the Superior Court, in The Code, secs. 1566, 1567 and 1568. If the guardian, then, in the present case, had received from the Clerk of the Superior Court an order authorizing and directing him to use a part of the capital of his ward's estate, the expenditure would have been legal and proper. The question, then, is, as it was in *Long v. Norcom, supra,* whether the guardian shall be allowed such disbursements as were deemed to be proper, or whether they shall be disallowed upon the single ground that the guardian did not obtain the authority of the Court before he made the expenditures.

We are of the opinion that if the Court had the power to authorize these expenditures to be made, and we have seen that the court of equity formerly had such power, and that the Clerk of the Superior Court now is possessed of that power, the Court could allow the guardian the amount of such *past* expenditures. The referee in this case has found from the evidence that the amount expended by the guardian was necessary to maintain the wards and to give them that degree of education necessary to their station in life. The wards could not be sent to the charitable institutions of the county for support, because the wards owned a large amount of property, and under such circumstances as appear in the case, if it has ever been held by the Courts of this State, that a ward should be put out as an apprentice, then we think the rule should be modified and altered. If the wards, then,

should not have been put out as apprentices and could and would not have been received for support by the county as paupers, then the income of the estate not being sufficient to furnish maintenance for the wards, the guardian had no choice but to use a reasonable amount of the capital for such support and maintenance; and the report of the referee allowing the same as reasonable and necessary was proper, and there is no error in that part of the judgment of the Court below in affirming that finding of the referee.

The referee in his fourth finding of fact found that the guardian did not rent the lands of the wards at public rentings, but that he rented them privately; "and that the best interest of the wards did not require a public rental of their lands." That finding was affirmed by his Honor and the defendants filed an exception. The defendant's contention is that the latter words of the finding of fact was in reality a conclusion of law, and we are of that opinion also. The Code, sec. 1590, and the amendment thereto in the acts of 1891, ch. 83, impliedly declare it to be to the interest of the wards to rent the lands publicly. If, upon the evidence, the referee had made a finding that although the rentings of the lands by the guardians were private, yet no injury had come to the wards, then there would be nothing in the exception. There was evidence before the referee to the effect that the lands should have brought and were worth more as rent than the guardian reported and was charged with, and therefore there should have been a finding on that question. That exception is sustained. The exception to the 5th finding of fact and the 6th conclusion of law of the referee, both affirmed by his Honor, must also be sustained. Those findings of the referee are so uncertain as to amount to no finding, and by their very words leave the matter open. The case is remanded to the end that the matter of rent of the ward's land and the Bradham transaction referred to in the 5th finding of fact and the 6th

conclusion of law may be proceeding with according to law. The costs to be divided between the parties.

Modified and affirmed.