KOSSUTH COUNTY STATE BANK v. MATTHEW RICHARDSON and ELLEN RICHARDSON ET AL., Appellants.

**Appeal:** REMAND FOR FURTHER PROCEEDINGS: ADMISSION OF ADDITIONAL EVIDENCE. Ordinarily the reversal of an equity action upon trial *de novo* terminates the litigation, the opinion indicating simply the character of the decree to be entered; but in furtherance of justice the appellate court may remand the cause for further proceedings, when, upon the filing of a *procedendo* the cause is before the lower court precisely as when originally submitted; and leave to introduce further evidence, omitted through inadvertance, may, upon proper showing and in the discretion of the court, be granted.

**Same:** REFERENCE OF CAUSE. Permission to offer additional evidence after a reversal upon a trial *de novo* in the appellate court is not a matter of absolute right, but of discretion reposed in the trial court, which should only be indulged where the proposed evidence has been discovered since the submission, or acts have occurred pending the proceedings vitally affecting the relief to be granted. In the instant case it was not an abuse of discretion to reopen the case for the purpose of receiving additional evidence to take the place of certain incompetent evidence received upon the original trial; and it is also held that the court properly heard the additional evidence without again referring the case to the referee before whom it was originally heard.

**Same:** AMENDMENT OF PLEADINGS: CHANGE OF POSITION. Where a cause has been tried *de novo* on appeal and remanded for further proceedings with respect to a particular finding of the trial court, the filing of an amendment changing the claim of the party on another issue, which was determined on the original submission and approved on the appeal is not authorized: as where a complete settlement was pleaded, found by the trial court and approved on appeal, an amendment withdrawing the plea and alleging instead that the settlement did not include all matters of

difference. Moreover as no additional evidence was received on the subject it was not permissible as conforming the pleading to the proof, and was too late to conform to the proof originally offered.

**Same:** FINDINGS BY COURT: CONSTRUCTION: CONFLICT. Although the findings in an equity action are to be treated as special verdicts, still in ascertaining the intent of each they must be construed with reference to one another; and when so construed it was apparent that certain items of an account, concerning which there was no dispute, were not treated by the court as involved in a claimed settlement there was no conflict, even though one finding standing alone indicated that all rights of the parties to the date of the settlement were disposed of.

**Evidence:** BOOKS OF ACCOUNT: ORAL EXPLANATION. Where proper foundation has been laid for the introduction of books of account oral evidence is admissible to explain figures or abbreviations which are not self-explanatory.

**Same:** EFFECT AS EVIDENCE. Books of account when offered in evidence stand in an important sense as a witness or deposition in the case, and their value as evidence depends largely upon their condition and the manner in which they have been kept; and as a general rule charges therein, to establish liability, must be specific and particular. Bank books showing debit and credit items between the parties are held insufficient to show that the bank had accounted to defendant for certain moneys collected.

*Appeal from Kossuth District Court.*—HON. A. D. BAILIE, Judge.

SATURDAY, DECEMBER 19, 1908.

REHEARING DENIED THURSDAY, MARCH 18, 1909.

ACTION to foreclose three mortgages. The defendant pleaded a counterclaim. The cause was referred, and to the report of the referee exceptions were filed. The district court's rulings thereon were approved, save that on exceptions to the eleventh finding. As to that the decree was reversed and the cause remanded for proceedings not inconsistent with the opinion. 132 Iowa, 370. Upon re-

mand, the district court, on application of plaintiff, opened the case and received additional evidence bearing on the issue involved in said finding, and, after its introduction, permitted plaintiff to amend its reply to conform with the proof. Decree was then entered as at the former hearing. The defendants appeal.—*Modified* and *affirmed*.

*Sullivan & McMahon, E. V. Swetting,* and *E. A. & W. H. Morling,* for appellants.

*W. B. Quarton,* for appellee.

LADD, C. J.—On the former appeal the district court's rulings on all the exceptions to the report of the referee, save on these to the eleventh finding, were approved. 132 Iowa, 370. This finding was: "That since the date of said settlement, to wit, on or about the 30th of April, 1894, there was a running account between plaintiff and defendant Richardson up to October 30, 1898, and there is due Richardson on said account $213.82, as shown by plaintiff's Exhibit 75." It appeared that during this interval plaintiff had received and collected on notes belonging to defendant, held as collateral security, the sum of $4,661.84. This was unaccounted for save by Exhibit 75, which, as a mere copy of the bank ledger, was denounced by this court as incompetent evidence, and the cause "remanded to the district court for proceeding not inconsistent with" the opinion. A petition for rehearing was "overruled without prejudice to the right of the appellee to make application in the district court for permission to introduce further evidence." *Procedendo* issued, and on February 1, 1907, plaintiff moved that the cause be reopened and leave be granted to introduce additional testimony. The above facts were recited and furtherance of justice stated as a ground for the relief prayed. The motion was supported by an affidavit to the effect that owing to certain in-

vestigations the accounting for the moneys collected was not supposed by plaintiff's counsel to be questioned, and he had thought the exhibit referred to properly in evidence. In both respects the record shows that he was mistaken.

Conceding this to have been so, however, we are of opinion that opening the case and receiving further evidence bearing on the eleventh finding of the referee was not an abuse of the court's discretion. This court had reversed the order of the District Court in overruling the exceptions to the particular finding of fact, and remanded for proceedings not inconsistent with the opinion, and the cause in respect to such finding upon the filing of the *procedendo* was before the District Court precisely as though originally submitted; the court being fully advised in the premises and the decision announced, though not entered of record. *Adams County v. Railway,* 44 Iowa, 335. After an original submission, leave to introduce evidence omitted through inadvertence, upon a proper showing, in the discretion of the trial court, might be granted, and, under the last-cited case, the same rule obtains when the cause has been remanded to the District Court for proceedings not inconsistent with the opinion. Moreover, the matter was relegated by this to the trial court for its determination. Ordinarily a reversal upon hearing *de novo* terminates the litigation, the opinion indicating the character of decree to be entered; but, whenever essential to effectuate justice, an appellate tribunal may remand to the trial court for such further proceedings as the circumstances of the particular case require. *Kreuger v. Walker,* 80 Iowa, 733; *Id.,* 94 Iowa, 506; *Byington v. Buckwalter,* 7 Iowa, 512. See *Brewer v. Hugg,* 114 Iowa, 486. This rule obtains elsewhere. *Landry v. Adeline Sugar Factory Co.,* 50 La. Ann. 542 (23 South. 621); *Wilkins v. Detroit,* 46 Mich. 120 (8 N. W. 701, 9 N. W. 427); *Smith v. Wilkins,* 31 Or. 421 (51 Pac. 438);

1. APPEAL: remand for further proceedings: admission of additional evidence.

*Jenkins v. Jenkins University,* 17 Wash. 160 (49 Pac. 247, 50 Pac. 785).

The authority of this court in its discretion to remand for the introduction of additional testimony then can not be doubted. If endowed with such authority, it also might remand with direction to the District Court to receive such testimony, if so advised, and that is precisely what was done in this case. The proceedings in the District Court were not to be inconsistent with the opinion, and, by the ruling on the petition for rehearing, the decision of this court was not to prejudice an application for the introduction of other evidence. The effect of these orders was to leave the entire matter for the determination of the District Court.

Of course, permission to introduce additional evidence after reversal is not a matter of right, and seldom should such indulgence be given, save where evidence has been discovered since the submission, or acts have occurred pending the proceedings, vitally affecting the relief to be granted; but this case is exceptional. Plaintiff had collected a large amount of money belonging to defendant, and the only evidence explanatory of its disposition or application has been adjudged incompetent. True reliance on the evidence declared incompetent was due to the mistaken judgment of counsel then appearing for plaintiff; but, as his opinion was shared by both the referee and District Court, it will not do to say that he was utterly without excuse. The order of the District Court permitted the introduction of competent evidence in its stead, clearly was in furtherance of justice, was not beyond the court's discretion, and has our approval. The authorities relied on by appellant are not in point. In *Chicago, Milwaukee & St. Paul R. Co. v. Hemenway,* 134 Iowa, 523, setting aside a former submission after appeal to enable the company to try the cause on a new theory, was adjudged to be error. Most of the

2. SAME: reference of cause.

other decisions cited relate to the filing of amendments to pleadings, as *Allen v. Davenport,* 115 Iowa, 20, holding that a new cause of action might not be set up by way of amendment after reversal, and *Zalesky v. Insurance Co.,* 114 Iowa, 516, deciding that, after twice submitting a case on admissions in the pleadings, an amendment setting up a denial of facts previously admitted was not permissible. See, also, *Wilhelmi v. Insurance Co.,* 103 Iowa, 532; *City Council of Marion v. National Life & Investment Co.,* 130 Iowa, 511.

Ordinarily, where an issue is to be retried, the practice is to refer the cause back to the referee. Here the court received the evidence and determined the issue. There was no error in this. The report of the referee is reviewable on exceptions filed. Section 3740, Code. In a law action sustaining the exceptions necessarily results in a new trial. *Lyons v. Harris,* 73 Iowa, 292. But equitable actions are under the control of the court, and it may make a new finding of fact or of conclusions of law and enter such a decree as the referee should have recommended in his report. *McHenry v. Moore,* 5 Cal. 90; *Wentzville Tobacco Co. v. Walker,* 123 Mo. 662 (27 S. W. 639); *Calvert v. Nickles,* 26 S. C. 304 (2 S. E. 116). In its discretion the court may recommit the cause to the referee, with instructions to receive additional evidence. *Tharington v. Tharington,* 99 N. C. 118 (5 S. E. 414); *Lowndes v. Miller,* 25 S. C. 119; *Murphey v. Shepardson,* 60 Wis. 412 (19 N. W. 356). Or the court may receive such additional evidence, pass on the issues, and enter decree. As the court must ultimately pass on the evidence, there is no reason for saying it may not retain the case for such procedure as may seem advisable.

II. It will be noted that the case was opened to receive evidence bearing on the eleventh finding only. After the evidence had been received, however, plaintiff filed an amendment to its original reply, withdrawing the fourth

paragraph thereof, in which it alleged that on or about
April 30, 1894, "a settlement was had and
entered into by and between plaintiff and
Matthew Richardson, and that in said settle-
ment all matters of difference existing be-
tween them were adjusted, settled and closed, and the de-
fendant Matthew Richardson at said time made and
delivered to this plaintiff a certain written promissory
note and real estate mortgage, for three thousand dollars
($3,000) which said sum was at that time found to
be due and owing plaintiff from the defendant," together
with the notes of $500 and of $600, which "are ac-
curately described and set out in plaintiff's amended and
substituted petition in this cause, . . . and was made
and delivered to plaintiff at the time of said settle-
ment, and for a balance due and owing plaintiff over
and above all credits and offsets, and was made and deliv-
ered to plaintiff in full settlement and adjustment of all
accounts and differences between plaintiff and defendant
to that date, and all matters of difference of whatsoever
nature between the plaintiff and the defendant were at
that time fully adjusted and settled, and such collateral
notes as plaintiff had on hand, and all collateral notes that
plaintiff had placed in the hands of collectors, or any and
all collateral paper which defendant had placed in plain-
tiff's hands or under its control, to secure defendant's in-
debtedness, were at the time of said settlement released and
surrendered and given over to the defendant, and all plain-
tiff's rights or claims in and to the same were released, and
since the date of said settlement this plaintiff has received
no collateral securities, or securities of any kind or de-
scription." The reason stated for filing the amendment
was that the testimony now shows that the said settlement
did not cover all the matters and differences of parties ex-
isting on that date, but, on the contrary, only covered and
pertained to the surrender and release to the defendant of

3. SAME:
amendment
of pleading:
change of
position.

the three $1,000 notes and certain collaterals which the plaintiff held as security and the taking of the $3,000 note and mortgage in suit in this case in lieu thereof, and, further, that the testimony then introduced showed a running account extending from 1887 to 1898, which had not been settled, and on which but a small balance was owing defendant. Defendant moved to strike on grounds: (1) That the amendment came too late; (2) it was not properly verified; (3) that plaintiff ought not to be allowed to change positions; and (4) the issue sought to be changed had been adjudicated. This motion was overruled, and erroneously so, for the cause had been fully submitted, and was opened to let in evidence on but a single issue. If other evidence was received, this was over the objections of defendant, and in plain disregard of the court's order. *Adams County v. Railway*, 55 Iowa, 94. In such a case, the provision of section 3600 of the Code, authorizing an amendment which "does not change substantially the claim or defense by conforming the pleadings or proceedings to the facts proved," has no application. To justify the filing of an amendment after the remand of a cause heard *de novo* in this court, matters must have arisen subsequent to the decree, or things must have happened pending the proceedings, which could not have been considered at the trial or owing to some other contingency which reasonable foresight could not well have guarded against. *Sexton v. Henderson*, 47 Iowa, 131; *Shorthill v. Ferguson*, 47 Iowa, 284; *Adams County v. Railway*, 44 Iowa, 335.

The cause was originally heard on the issue of settlement pleaded in this reply. Evidence had been introduced by both parties bearing thereon. The assistant cashier of plaintiff had testified:

Exhibits E and F are notes executed to the Kossuth County State Bank by Mr. Richardson. I wrote the papers up for him to sign. I met him on the street, and told him I noticed by the docket over here there were several judg-

ments going of record against him, and he said, 'Yes, he knew there was a few.' He says, 'I think I better give you a mortgage on my land I have got in my name, so that you will be ahead of them.' I says: 'All right, you can. You have got it down to only $3,000, and you can give us a mortgage there. Of course, the land is not worth that. You can give us a mortgage, and take up a lot of the old paper.' He says, 'That is just what I want to do.' Well, I told him then that, as the land would not be worth the mortgage, the $3,000 and the two small ones against it, that he must clear off the judgments. He said he would do this, so that we would be the second lien on the land, and so I drew this mortgage for him, and he signed it in the little old building he used to have up there, and Mrs. Richardson came there, and she signed it also, and Ed went up and took their acknowledgment some time after, and we were a few days fixing it up, and then he came down. He says, 'I want you to come with me to Gene Clarke's office so he can't kick and claim any.' So I went with him and gave Gene orders that he need not turn any more money to us, to give it to Richardson, and in May he gave him the balance of the paper he had; but he came in afterwards and borrowed a small amount, and left a few notes there, and those were taken right up when he paid his notes. That was, I think there was no record or anything made of them. I ain't sure, something like a week, or something like that, he wanted a little money. It was our last deal. He ain't claimed anything or we ain't. That was the settlement, we cleaned up that time, and we were to take the $3,000 mortgage. He was to pay the judgments off that was against him so as to leave us second lien on the land. The conversation was, simply we agreed that he should take all the notes, all collateral notes. He says, 'I suppose you will give me all my old notes if I give you this mortgage,' and I says, 'Yes, sir; we will.' I personally gave him all the notes we had in the bank, turned them over to him, and told him, 'I have marked them off the register.'

On the other hand, Richardson testified that, though the bank agreed to turn over to him $3,000 in collateral paper, it finally refused to do so, and never delivered to

him any notes save a few, aggregating in face value $120. The cashier admitted the bank did not return the collaterals until the judgments were paid. Moreover, there was an adjudication on this precise issue which had not been set aside or modified in any way. The fourth and fifth findings of the referee were responsive to the issue thus pleaded and the evidence referred to, and may be set out: "(4) That on or about the 30th day of April, 1894, there was a full and complete settlement of all matters existing between plaintiff and said defendant M. Richardson, and that said defendant Richardson made to plaintiff the $3,000 note and mortgage; said sum being the amount due from said defendant to plaintiff. (5) That at the time aforesaid, to wit, about the 30th day of April, 1894, said plaintiff accounted for and delivered to said Richardson all notes held or delivered to it by said defendant Richardson, as collateral security or otherwise." Exception was taken to each of these by defendant, on the ground that the evidence adduced showed that the collateral notes had not been surrendered by the bank. The court overruled the exception to the fourth finding and sustained that to the fifth finding. These rulings by the District Court were approved on appeal, and, as said, had never been disturbed. There was an adjudication of the facts of settlement then and that plaintiff did not comply with the condition that it should return to Richardson the collateral security held. In view of this situation, the design of plaintiff in pleading the settlement failed, and upon remand it sought to change its tactics by denying what it had before expressly pleaded and on which it had procured an adjudication. Such a practice of changing hold to meet emergencies can not be tolerated. *Zalesky v. Insurance Co., supra.* Moreover, there was no additional evidence received on the subject, and therefore no occasion to amend the pleadings to conform to the proof then adduced, and, after the issue had been fully adjudicated, it was too late to amend to conform

to the proof introduced on the original presentation. It was rather an attempt to avoid the effect of the referee's finding fully confirmed by the courts, and on the same evidence procure a different finding after remand. We are of the opinion that the court erred in permitting the plaintiff to withdraw the portion quoted from the original reply.

III. It will be observed, however, that, though Exhibit Seventy-Five was not admissible in evidence, it did form a part of the eleventh finding of the referee, and,

4. SAME: findings by court: construction: conflict.

basing his conclusion thereon, he declared $213.32 to be owing the plaintiff. On the last hearing, that exhibit was proven to be a true copy of the account between Richardson and the bank from 1887 to 1898, inclusive, and as explained exhibited five notes as having been paid by the bank after April 30, 1894, the time of the settlement from the proceeds of collateral security held by the bank. As such payment was approved by this finding, the referee could not have intended by the fourth finding to hold that the settlement of April 30, 1894, was of all obligations of Richardson to the bank. Otherwise, his report is in the anomalous condition of finding the notes last mentioned included in the settlement in which the note of $3,000 sued on was executed, and at the same time treating them as an offset to moneys of Richardson subsequently collected. Manifestly, the referee did not regard notes concerning which there appears to have been no controversy as matters of difference between the parties included in the settlement. This view is somewhat strengthened by testimony of the cashier and his assistant exhibited to the trial court on the last hearing, but not abstracted on appeal to the effect that upon the execution of the note of $3,000 sued on three notes of $1,000 each were delivered to Richardson. He denied this, but did not dispute the existence of such notes. While the findings are to be treated as special verdicts in ascertaining the meaning of the referee in each, they must

be construed with reference to one another, and, when so construed, we are of opinion that all existing notes of Richardson were not intended by the referee by the fourth finding to have been included in the settlement.

IV. It having been proven that plaintiff received some $4,661.84 between April 30, 1894, and October 30, 1898, the burden of proof was on the plaintiff to satisfactorily account for this sum. On the former hearing it was content to do this by the introduction of a copy of its ledger account with Richardson. On the last hearing the books of original entry were introduced. Appellant takes numerous exceptions to the preliminary proof; but, without reviewing those in detail, we have to say that the foundation for their introduction was sufficient. The business of a bank is to deal in moneys, checks, drafts, notes, and the like, and of necessity its accounts relate to such items. *Orcutt v. Hanson,* 70 Iowa, 604; *Young v. Jones,* 8 Iowa, 219. If the figures or abbreviations were not self-explanatory, oral evidence was admissible to indicate the meaning intended. *Bay v. Cook,* 22 N. J. Law, 343; *Wingate v. Mechanics' Bank,* 10 Pa. 104; *In re Fulton,* 178 Pa. 78 (35 Atl. 880, 35 L. R. A. 133), an exact copy of the items.

*5. EVIDENCE: books of account: oral explanation.*

The following are charged to Richardson in different parts of the books:

1894.

| | | | |
|---|---|---|---|
| May 4. | Rec'd mtg. | $ | .75 |
| " 7. | Int. | | 24. |
| " 18. | Int. | | 12. |
| June 18. | Int. | | 20. |
| " 30. | 8105 pd. | | 600. |
| Aug. 8. | Int. | | 15. |
| | | | 24. |
| " 15. | Int. | | 45.55 |
| Sept. 27. | Int. | | 20. |

1894.
Nov.  8.  Int. . . ..................... 24.
 "  19.  Int. . . ................... 12.
1895.
Jan.  5.  '94. . . .................... 20.
 "   7.  '94. Coupon. ................ 35.
Feb.  7.  Int. . . .................... 24.
Mar.  9.  Int. . . .................... 20.
May  7.  Int. . . ................... 24.
 "  27.  ........ . . ............... 25.
June 10.  Note pd. .................... 1,000.
Aug.  8.  ......... . . ............. 24.
Sept. 21.  Int. . . .................. 32.
Nov.  6.  Note and Int. ............... 603.20
 "  12.  Int. . . .................... 24.
1896.
May  8.  Int. . . .................... 24.
July 20.  Atty. fees ................. 22.
 "  22.  8190 pd. .................... 393.30
Aug. 10.  Int. . . .................... 24.
 "  29.  Atty. fees. ................. 30.
Nov. 10.  Int. . . ................... 24.
1897.
Feb.  8.  Int. . . ................... 24.
May  5.  Int. . . .................... 24.
1898.
May  2.  Note pd. ................... 1,200.
        Int. . . ................... 71.20
Sept.  9.  1898. Recording mtg. .......... .60

It will be observed that the book entries are not suffi-
ciently explicit to indicate what the items are, or that they
are correct charges against the defendant; but the cashier
of the bank testified that, under the system of bookkeeping
followed by the bank, where figures merely were entered,
these indicated the payment of cash on defendant's checks.

Though without personal recollection, he seems to have excepted an item of $24 August 8, 1894, the same amount March 9, 1895, $24, August 8, 1895, and testified these were for interest, as were all others noted as "int." The cashier also testified that "8105 pd." and "8190 pd." each referred to a note so numbered which had been paid, that he had no personal recollection of what any of the notes were, but could ascertain from a note register of the bank, and in his language: "8105, it was made on the 28th of April, 1892. The item that I refer to under date of November 6, 1895, No. 7732, was given on the 18th of August, 1891. The item I refer to in my direct examination, dated July 22, 1895, of $393.30, note paid, is No. 8190, Sutton Dodge and Richardson note. I had that since August 22, 1892. That is the time it was taken. The item I spoke of on direct examination, May 2, 1898, $1,200, was taken October 5, 1891. That is the time we acquired that note. That interest item of $71.20, that I referred to May 2, 1898, is the interest on that $1,200 note. . . . June 30, 1894, is our note No. 8105, which was made April 28, 1892, as I discover from looking at the loans and discounts of that date, and find No. 8105 charged up. The note charged June 10, 1895, No. 8023, was given March 8, 1892. . . . I find this by looking at the loans and discounts of that date. Richardson was given credit for the proceeds of that note on March 8, 1892. On November 6, 1895, note was paid for $393.30, No. 7732. We took that note August 22, 1892. May 2, 1898, note paid, $1,200. We took that note October 5, 1891, and interest charged $71.20." The payment of the $22 for attorney fees was sufficiently explained, but no showing whatever made as to the "$30 atty. fees" or the recording fees. The item for attorney fee must have had reference to some payment to an attorney, a third person, as also each of those for recording fee, and the entries, as they appeared on the books, were not competent evidence to prove these. *Lyman v. Bechtel,* 55

Iowa, 437; *Snell v. Eckerson,* 8 Iowa, 284; *Brannin v. Voorhees,* 14 N. J. Law, 590. The same is true of the coupon, $35. The witness explained that the entry meant that money had been paid out for an interest coupon to some third person, and, in the absence of any further showing, it ought not to have been allowed. Equally clear is it that the other items were on alleged notes held by plaintiff, and, insofar as computed on notes proven, should have been allowed. The evidence as to the notes on which the collections were applied was extremely unsatisfactory. Of course, the note register, as merely a memorandum and separately offered, was not admissible in evidence. *United States Bank v. Burson,* 90 Iowa, 191; *Security Co. v. Graybeal,* 85 Iowa, 543. But, as a part of the bank's system of accounts, and as explanatory of entries on the journal and other books, we see no reason for not introducing that kept by the bank in evidence. Certainly, had these notes been executed to the bank, the journal entries and those in the note register should have disclosed the facts. Indeed, the cashier testified that the books would do so, but no effort was made to prove these. Why such material evidence should have been withheld is unexplained. Whether any of these notes had been returned to Richardson with a passbook was in dispute with the circumstances strongly favoring defendant's denial. The dates of the notes finally were given, but no evidence was adduced tending to show the times of their maturity, or, save as set out, to whom they were executed or by whom signed. It was fairly to be inferred from the evidence of the cashier, speaking from the books, that the $393.30 note was executed by Richardson, and, as it appeared that credit was given to him for the proceeds of the $1,000 note, it may be inferred that he executed it. The witness testified that other notes were taken, acquired or charged; but, aside from this, there was no proof that they were instruments on which the bank might apply the money of Richardson properly. No explanation

of the other entries as to notes was attempted, and the question we have to determine is whether the mere entries on bank journals in form as follows:

| | | |
|---|---|---|
| June 30, 1894. | 8105 pd.................. | $   600. |
| Nov. 6, 1895. | Note and Int............... | 603.20 |
| May 2, 1898. | Note paid.................... | 1,200. |
| | Int. . ............................ | 71.20 |

—with no other evidence, save that these entries, meant notes paid, and of the date of each, will warrant the entry of a judgment thereon in its favor.

When books are received in evidence, they stand in an important sense as a witness or deposition in the case. *Mathews v. Herron,* 102 Iowa, 45. Their value as evidence

6. SAME: effect as evidence.

depends largely upon their condition and manner in which they are kept. *Christman v. Pearson,* 100 Iowa, 634. They certainly should be given no greater effect than the testimony of a witness with knowledge to precisely what the books contain. Suppose the cashier or other officer of the bank had testified to precisely what these books disclose—that is, that the bank had applied the amounts specified on notes of the date and amount specified, without more—would any one be warranted in concluding that Richardson was liable thereon? Were they executed by him to the bank? Did the bank pay them to some third person for him? Did they bear his signature, or did the bank charge him therewith because of his indorsement or guaranty, or were they notes paid to some one else? The record before us furnishes no answer to these inquiries, nor does it indicate in any way that the notes were proper charges against Richardson. While a book account, when received, is *prima facie* evidence of what it contains, as a general rule the charges therein, to establish liability alone, must be specific and particular. *Cummings v. Nichols,* 13 N. H. 420 (13 Am. Dec. 501);

*Corr v. Sellers,* 100 Pa. 169 (45 Am. Rep. 370); *Baldrige v. Penland,* 68 Tex. 441 (4 S. W. 565); *Cargill v. Atwood,* 18 R. I. 303 (27 Atl. 214). To omit any of the books of original entry throwing light on the items of charge is ordinarily a ground of suspicion at least. See *Larue v. Rowland,* 7 Barb. (N. Y.) 107. The entries, considered together, should identify the item charged, at least, and, in case of money paid for or applied on note or other written obligation, with such particularity as to show that it constituted a liability of the party against whom the entry had been made. This much is essential to safety in permitting books of account to supply *prima facie* evidence of the items entered therein.

Our conclusion is that the court should have rejected the charges as indicated above, and credited plaintiff with the remaining items only. The result, as is always the case when the character of the evidence suggests but falls short of proof, is not entirely satisfactory; but plaintiff, after having been afforded a second opportunity to account for money collected on notes held by it as collateral security, has failed in large part to do so. Decree may be entered in this court, or the cause may be remanded to the District Court for that purpose.—*Modified* and *affirmed.*