[Civ. No. 8527.   First Appellate District, Division One.—September 24, 1932.]

THE COUNTY OF CONTRA COSTA, Respondent, v. COWELL PORTLAND CEMENT COMPANY (a Corporation), Appellant.

J. E. Rodgers and A. F. Bray for Appellant.

James F. Hoey, District Attorney, Rex L. Boyer, Assistant District Attorney, and Archibald B. Tinning for Respondent.

THOMPSON (GEORGE H.), J., *pro tem.*—In what is designated herein "Clerk's Transcript on Appeal", there is set forth what purports to be a copy of each of the following, viz., (1) Complaint, (2) Amendment to Complaint, (3) Answer, (4) Amendment to Answer, (5) Forms of Special Verdicts and stipulation concerning the submission of such verdicts, (6) Findings of Fact and Conclusions of Law, filed March 13, 1928, (7) Judgment, dated and filed March 13, 1928, (8) Clerk's Certificate, dated March 13, 1928, to Judgment (that it is a true copy of judgment rendered in the action and entered in Volume 30, Judgment Book of said court, at page 468, and further, that the papers annexed constitute the judgment-roll in said action), (9) Notice of Intention to Move for New

Trial, dated March 14, 1928, and filed March 15, 1928, (10) Minute Order of Court, dated May 7, 1928, retaxing costs on defendant's motion to tax costs, also minute order denying defendant's motion for new trial after hearing had thereon, (11) Notice of Appeal, dated May 7, 1928, from judgment rendered on March 13, 1928, in favor of County of Contra Costa and against defendant, Cowell Portland Cement Company, and from the whole thereof, (12) Notice to Prepare Transcript. There is, however, no authentication of the said designated clerk's transcript, the clerk having failed to certify it. The reporter's transcript was duly certified and authenticated by the trial judge under section 953a of the Code of Civil Procedure.

The latter, however, embraces only and is restricted to the testimony and proceedings at the trial which began on January 5, 1928, and ended on January 19, 1928. It is of course well understood that the clerk alone may authenticate the judgment-roll and the notice of appeal. Nevertheless, we will treat the said designated transcript as a proper transcript on appeal from said judgment under notice of appeal appearing therein, and will proceed as if the clerk had duly certified and authenticated it as to all matters so appearing in said designated transcript as above mentioned.

It will thus appear that the defendant has appealed from a judgment in favor of the plaintiff in an action that was brought by the plaintiff against the defendant under section 2322a et seq. of the Political Code for judgment and decree that the amount of the expense incurred by the plaintiff in 1927 in eradicating, controlling and destroying squirrels constituting a public nuisance, and the amount of penalties by operation of law attached thereto, be adjudged and decreed a lien in favor of plaintiff against the described premises of the defendant, and that the said premises be sold to satisfy the amount of the lien, together with costs, etc. It will also be noted that the judgment appealed from was made and entered March 13, 1928, and that the appeal is from that judgment alone so then made and entered.

The first contention of defendant and appellant is that section 2322a of the Political Code—under the authority of which section the action was brought—is unconstitutional

in that it causes a lien to attach without due process of law, or, as otherwise stated, without any hearing or opportunity for hearing having theretofore been given. In this regard, we understand the proposition particularly contended for is that the order of procedure is material and that before the expense of the abatement entry could in any way even initiate a lienable right on the part of the plaintiff, a hearing or an opportunity for a hearing concerning the existence of the facts which under the statute would support a lien is a prerequisite and that under the Constitution, in the absence of such preliminary step, i. e., that such hearing first be had, or that such opportunity for hearing first be given, there could be no initiation of any lienable right. But when statutes are measured or construed with reference to constitutional limitations, we do not think that such controlling importance is attached to the mere method of procedure or to the order of the procedure set forth in the statute. The statute is measured and construed in its entirety, and unless when so considered it is violative of constitutional rights, it is not unconstitutional. Illustrations of this rule are many. (*People* v. *Hickman*, 204 Cal. 470 [268 Pac. 909, 270 Pac. 1117]; *Capital Traction Co.* v. *Hof*, 174 U. S. 1 [43 L. Ed. 873, 19 Sup. Ct. Rep. 580].)

█ Section 2322a of the Political Code is referable to the police power. The police power is universally considered "to justify the destruction or abatement . . . of whatever may be regarded as a public nuisance. . . . " (*Lawton* v. *Steele*, 152 U. S. 133 [38 L. Ed. 385, 14 Sup. Ct. Rep. 490, 500].) " . . . every property owner . . . is also bound so to use and enjoy his own as not to interfere with the general welfare of the community in which he lives. It is the enforcement of this . . . duty which pertains to the police power of the state so far as the exercise of that power affects private property. Whatever restraints the legislature imposes upon the use and enjoyment of property within the reason and principle of this duty, the owner must submit to, and for any inconvenience or loss which he sustains thereby he is without remedy. It is a regulation and not a taking, an exercise of police power and not of eminent domain." (1 Lewis on Eminent Domain, 3d ed., sec. 6.) " . . . statutes providing for the summary destruction of vegetation infected with contagious pests,

without any preliminary judicial inquiry and without compensating the owner for the resulting loss, are perfectly constitutional so long as they themselves define what constitutes a nuisance, and there is a right to a subsequent judicial review of the action of the administrative officer.'' (1 R. C. L., p. 790.) ▉ Said section 2322a as it read in 1927, the year when the county incurred the expenses involved herein, invested the horticultural commissioner with full authority to enter premises within his jurisdiction and to inspect the same or any part thereof, and if such premises were found infected or infested with animal pests injurious to fruits, plants, vegetables, trees or vines, in writing to ''notify the record owner or owners, or person or persons in charge or in possession of said premises . . . that the same are infected or infested with said . . . animal pest . . . and require such person or persons, to eradicate or destroy or to control to the satisfaction of said commissioner the said , . . animal pests . . . within a certain time to be therein specified''; provided how such notice should be made by the commissioner and recorded with the county recorder (subds. 1 and 2); expressly declared ''Any and all premises . . . infected or infested with . . . animal pests . . . to be a public nuisance (subd. 5); provided that ''Whenever any such nuisance shall exist at any place within a county, and the proper notice thereof shall have been served as hereinbefore provided and such nuisance shall not have been abated within the time specified in such notice, it shall be the duty of the said commissioner to cause said nuisance to be at once abated by eradicating or by controlling, or by destroying said . . . animal pests . . . ''; and that the expense thereof shall be a county charge and the board of supervisors shall allow and pay the same; that ''any and all sums so paid from the date of payment shall be and become a lien on the property and premises from which said nuisance has been removed or abated''; that ''Notice of such lien shall be filed and recorded . . . within thirty days after the right to the said lien has accrued and a copy of said notice of lien shall be mailed to'' certain mentioned persons; that ''If said sum secured by said lien be not repaid to said county within eighty days from the filing of said notice of lien'', certain penalties shall be added; and that ''An action to foreclose said lien

shall be commenced within ninety days after the filing and recording of said notice of lien . . . " (subds. 6 and 7).

It will be noticed from an inspection of the provisions of the section just mentioned that the validity of any lien claimed thereunder is dependent upon the existence of a number of facts constituting a premise upon which the right of lien is based, viz., the existence as a fact of the alleged public nuisance, the service of a reasonable notice on the owner to abate, etc., the failure of the owner to abate, etc., within the reasonable time so specified, the abatement thereafter performed by the county, the expense thereof, etc., etc., all of which enumerated facts must be legally established against the owner in a suit wherein the owner is a party defendant before such lien may be declared to be legally enforceable against his property. " . . . the lien in question here could not be enforced until after a judicial investigation and determination by a court." (*County of Los Angeles* v. *Spencer,* 126 Cal. 670, 673 [77 Am. St. Rep. 217, 59 Pac. 202, 203].) In support of its contention in this respect, the appellant has cited particularly *Hutson* v. *Woodbridge Protection District,* 79 Cal. 90 [16 Pac. 549, 551, 21 Pac. 435], but in that case it is expressly stated by the Supreme Court in the opinion that: "The assessment is by the terms of the act made an absolute lien on his property, without any provision or opportunity allowed him to show its illegality or unconstitutionality. . . . The act is unconstitutional."

The act we have now under consideration is not open to any such criticism, for it provides in terms that, before the alleged lien may be enforced against the property, the owner shall have his day in court, in a suit wherein he is given full opportunity to show the true facts and the illegality of the proceedings if such illegality exists, and to present all defenses which he may desire. As all property is held subject to the exercise of the police power of the state and as the abatement of a nuisance is an exercise of the police power, it would seem under the situation here presented—the defendant having been duly notified and required to abate the nuisance, the defendant's casting upon the county the work of so abating through failure to respond to and comply with said requirements, the assumption and discharge of said service by the county

as to said property which the defendant should have performed—that the equitable consideration of benefit conferred and service rendered, regarded as a necessary basis for a statutory lien, is unquestionably here present, the issues on the trial having been decided in favor of plaintiff. The lien given by the statute is but for an indebtedness due the county, and the collection of that indebtedness by means of the enforcement of a lien therefor as prescribed by the statute is not obnoxious to any constitutional inhibition. (*County of Los Angeles* v. *Spencer, supra; County of Riverside* v. *Butcher,* 133 Cal. 324 [65 Pac. 745]; *Odd Fellows' Cem. Assn.* v. *San Francisco,* 140 Cal. 226, 230 [73 Pac. 987]; *California Reduction Co.* v. *Sanitary Works,* 199 U. S. 306 [50 L. Ed. 204, 26 Sup. Ct. Rep. 100]; *Reclamation Dist. No. 108* v. *Evans,* 61 Cal. 104; *Hagar* v. *Reclamation District No. 108,* 111 U. S. 701 [28 L. Ed. 569, 4 Sup. Ct. Rep. 663]; *In re Madera Irr. Dist.,* 92 Cal. 296, 323 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 279].) Within the purview of the controlling principles of this case, it may be properly said—as was said in the case last mentioned—defendant's property is not taken from it without process of law if it "is allowed a hearing at any time before the lien . . . becomes final".

It is contended that the board of supervisors did not determine to proceed with the eradication work under the alternative method provided by section 2322a of the Political Code. Unquestionably it is the law that the board must determine in advance the method of procedure that is to be followed. (*County of San Benito* v. *Wapple,* 188 Cal. 423 [205 Pac. 673]; *County of Riverside* v. *Title Ins. etc. Co.,* 202 Cal. 233, 238 [259 Pac. 759]; Id. [252 Pac. 776, opinion in District Court of Appeal].) However, from an examination of the evidence bearing on this point, we think that there is substantial support for the finding of the court reading as follows: "V. That prior to the 27th day of April, 1927, the Board of Supervisors of the County of Contra Costa, State of California, had selected and determined, and did select and determine, to adopt the method and procedure provided in section 2322–A of the Political Code as the method and system to be used in said County of Contra Costa, for the extermination of

ground squirrels therein and had authorized and directed and did authorize and direct the said horticultural commissioner of the said County of Contra Costa, to take action and institute such proceeding under the provisions of section 2322–A of the Political Code as might be necessary to eradicate and control ground squirrels on any land in said county that was infested with ground squirrels.''

█ It is also contended that the county in this work employed persons not certificated as required by subdivision 8 of section 2322a of the Political Code (as said section read in 1927), which section provided that no person shall be permitted to engage for hire in the business of eradicating or controlling plant diseases, insect or animal pests or noxious weeds injurious to the plant industry of the state ''who has not first secured a certificate'' in the manner therein provided; and also provided that the horticultural commissioner shall have the power and authority to issue certificates to all persons whom he shall find to be duly qualified for engaging in such work. But in this case it was the county that was engaged in the work with which we are concerned, and obviously the county was under no necessity to secure a certificate or to secure a certificate for its agents or employees in the work. The county was not engaged for hire in any such business, but was doing the work as a governmental function and as an exercise of the police power of the state. Manifestly, the purpose of subdivision 8 was to require proper qualification on the part of persons who as a business engaged in and undertook the eradication of pests for the public generally, and to insure such proper qualification on the part of such persons—required them to submit to examination and to be certificated—for the protection of the public, against incompetent and unqualified persons. The said subdivision does not expressly or by any necessary implication require that the horticultural commissioner shall certificate himself or any of his deputies or agents, or that any agent of the county shall be so certificated, and, such being the case, the statute must be construed as not binding on the state and its agents. (*Balthasar* v. *Pacific Elec. Ry. Co.*, 187 Cal. 302 [19 A. L. R. 452, 202 Pac. 37]; *Ruperich*

v. *Baehr*, 142 Cal. 190 [75 Pac. 782]; *Marin Municipal Water Dist.* v. *Chenu*, 188 Cal. 734 [207 Pac. 251].)

██ The appellant contends that the horticultural commissioner was unfair, arbitrary and unreasonable, but, as against this contention, the court found the horticultural commissioner was not "arbitrary, capricious or unreasonable", and we think the finding of the court is supported by the evidence.

██ As to appellant's contention that it is charged with the estimated rather than the actual expense of the work, and that several parcels are attempted to be included in one claim of lien, we think the county satisfactorily showed that it had expended on behalf of the appellant the amount allowed by the court, and that as the described premises was but one farm operated as one unit, the objection is not good. (*Warren* v. *Hopkins*, 110 Cal. 506 [42 Pac. 986].)

██ It appears that one of the defenses of the appellant at the trial was that the horticultural commissioner had extended the time within which the work of eradicating and controlling the squirrels by appellant on his property was required to be done, and that despite such extension and while the further period so given was unexpired, 'the horticultural commissioner entered with his men and commenced the work of extermination on the property. In such connection the court instructed as follows: "Question 4: Did the Horticultural Commissioner extend the time for defendant to eradicate, destroy or control squirrels on the premises described in the complaint. I instruct you that the affirmative of that issue would be upon the defendant, that is to say if you were to find that the time was extended, that that would have to be established by the defendant by this preponderance of evidence."

It is shown by the reporter's transcript that the plaintiff had introduced in evidence as Plaintiff's Exhibit No. 2, the written Notice to Abate Nuisance, dated April 27, 1927, with proof of service on that date. That written notice so given on April 27, 1927, contained the following language: "You are hereby required to eradicate, destroy, or control the said rodents (ground squirrels) to the satisfaction of the Horticultural Commissioner within ten days after the service on you of this notice." The question of whether or not such extension had been given was sub-

mitted to the jury as question 4 of the six questions that were submitted to the jury. The instruction above quoted was given by the court in connection with said question 4.

The plaintiff's case was based upon the fact that on April 27, 1927, said written notice so requiring eradication, etc., within ten days was served on the defendant (see paragraph of the complaint). Plaintiff's exhibit No. 2 was put in as evidence of such fact. The claim of the defendant was that that notice of ten days had been extended. Appellant contends that it was error for the court to so instruct the jury, in that the law placed the burden upon the plaintiff of proving its case by a preponderance of the evidence. That a plaintiff must so prove his case is of course always true, but said defense of "extension" of time so attempted by the defendant was an affirmative defense and was no part of plaintiff's Question 4, so submitting to the jury the question: "Did the Horticultural Commissioner *extend* the *time?*" etc. (italics ours), was, under stipulation of the parties, submitted to the jury. The defendant therefore must have used the words "extend" and "time" advisedly. Extend what? What time? Obviously, the question had reference to plaintiff's proof, plaintiff's exhibit number 2, service of notice of April 27, 1927, and the ten-day limitation in that notice. Plaintiff had to establish that it had given the ten-day notice alleged in the complaint. As against such evidence, any defense on the part of defendant that the plaintiff had canceled its ten-day notice by extending the time or by any other act destructive of the ten-day limitation in the notice would have to be established by the defendant. Under such a situation, there was nothing misleading or incorrect in the instruction. Objection is also made to the language of the court used when submitting to the jury question 5: "Was defendant making a reasonable effort to eradicate, destroy or control ground squirrels on the premises described in the complaint at the time the men employed by the Horticultural Commissioner on behalf of the County of Contra Costa commenced eradication work on said premises?" We have considered the instruction in the light of the objection made, but we are of the opinion that it is not fairly susceptible of the construction attached by appellant. It must be remembered that the question submitted was whether the defendant was making a reasonable

effort to eradicate, etc. In the court's endeavor to show that the law is reasonable, and that what it requires is reasonable and fair action, we see nothing that would naturally give the jury the idea that the defendant had taken an arbitrary position. ■ The foreclosure of a lien being in equity, the jury, if made use of, serves only in an advisory capacity, and it is on the findings, etc., of the court that integrity of the judgment depends. The court is not bound by the action of the jury, but is free to disregard its conclusions if they do not appear to be sustained by the evidence, or are otherwise unsatisfactory to it. In such view, error in instruction to an advisory jury is not regarded as controlling, for the judgment and decree are the action of the court and not of the jury. However, in this case the six questions submitted to the jury were answered in accordance with the allegations of plaintiff's complaint. The court found in favor of the plaintiff, and we find that the judgment and decree of the court are supported by the evidence.

■ Finally, the appellant objects to certain items of costs. As already mentioned, it appears that the judgment (which carried costs) was made and entered March 13, 1928, and that on May 7, 1928, on a motion of defendant to retax, the court struck out various items from the cost bill and ordered "that plaintiff's costs herein be and the same are hereby taxed in the sum of $507.60". From that order so retaxing costs and fixing them at $507.60, we do not find that any appeal was taken. No notice of appeal from the said order appears in the record. Neither does there appear in the record any copy of the motion upon which said order was based, or any copy of any paper or anything else made use of in connection with the hearing of said motion, or in connection with the order made thereon, or at all. Other than the setting forth of the court's order of May 7, 1928, so retaxing said costs as mentioned, the record (both clerk's and reporter's) is absolutely silent. There is nothing presented that could be regarded as operative in such connection, either as a bill of exceptions or other statement on appeal. Of course, in that the judgment of March 13, 1928, awarded costs to the plaintiff, the authority of the court so to charge the costs against the defendant, would be a question that could be raised upon appeal from the judgment, for such part of the judgment so awarding costs is as

much a part of the judgment subject to review on appeal from the judgment as any other part of it. (*White* v. *Gaffney*, 1 Cal. App. 715 [82 Pac. 1088], and cases cited therein.) Under the findings of court on the issues presented, any contention that the judgment should not properly carry costs would be untenable, and we do not understand that the appellant makes any such contention. The contention of appellant appears to be that the order of May 7, 1928, retaxing the costs and fixing them at a total of $507.60, was based on a computation of mileage for witnesses not warranted in law. But it is now settled that an order on a motion to retax a cost bill, made after the rendition and entry of final judgment, is appealable, as a special order after final judgment. (7 Cal. Jur., sec. 38, p. 298; *Elledge* v. *Superior Court,* 131 Cal. 279 [63 Pac. 360]; *Crane* v. *Forth,* 95 Cal. 88 [30 Pac. 193]; *Empire Co.* v. *Bonanza Co.,* 67 Cal. 406 [4 Pac. 810]; *Dooly* v. *Norton,* 41 Cal. 439; *Hennessy* v. *Superior Court,* 194 Cal. 368 [228 Pac. 862]; *Markart* v. *Zeimer,* 74 Cal. App. 152 [239 Pac. 856]; *Schallert-Ganahl L. Co.* v. *Neal,* 94 Cal. 192 [29 Pac. 622]; *Quitzow* v. *Perrin,* 120 Cal. 255 [52 Pac. 632]; 2 Spelling, New Trial and Appellate Practice, sec. 519, pp. 1086–1089; 2 Hayne, New Trial and Appeal, secs. 196, 197, pp. 1001, 1016.)

In that no appeal appears to have been taken from said order of May 7, 1928, retaxing and fixing said costs as a total at $507.60, the said order being an order made after final judgment, we know of no authority that would now permit us to consider the objections raised by the appellant against any of the items that may have entered into said computation. It is manifest that said judgment and decree of the trial court should not be disturbed.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.