(No. 6220. October 11, 1935.)

METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Appellant, v. TWIN FALLS COUNTY, a Political Subdivision of the State of Idaho, Respondent.

[50 Pac. (2d) 7.]

S. T. Lowe, for Appellant.

Edward Babcock, J. W. Porter and O. W. Witham, for Respondent.

MORGAN, J.—Rena King and her husband, to secure the payment of $1,750 to Home Investment & Savings Company, mortgaged to it 40 acres of farm land in Twin Falls County. The mortgage was sold and assigned to appellant and was recorded in the office of the county recorder of said county. Thereafter the county, pursuant to I. C. A., Title 22, Chapter 17, commenced proceedings to exterminate, and furnished labor and materials employed and used in exterminating, noxious weeds on the mortgaged land and filed its claims therefor as in said chapter provided. This suit was commenced to foreclose the mortgage; the county was made a defendant, and a decree that its claims be held to be null and void was prayed for. The mortgagors defaulted and the county answered setting up its claims and asserting priority of its lien to secure payment of the expense of exterminating the weeds. A decree was entered foreclosing the mortgage and adjudging that the county had a lien superior thereto. Plaintiff has appealed from that portion of the decree adjudging the county's lien to be superior to that of the mortgage.

Appellant insists the claims of the county are invalid for a number of reasons. Answer to one of its contentions will render discussion of the others unnecessary. The question, answer to which is decisive of the case, may be stated as follows: Is the lien, provided by our statute to secure the payment of money expended by a county in supplying labor and material employed and used in exterminating noxious

weeds on a farm, superior to the lien of a mortgage thereon which was recorded before steps were taken looking to the extermination of the weeds?

I. C. A., sec. 22–1702 makes it the duty of the board of county commissioners to issue an order on or before March 1, of each year stating the kinds of weeds that are detrimental to the interests of the county, requiring their destruction and specifying the area within which, and the manner in which, they shall be destroyed. Sec. 22–1703 provides for giving notice of the order by personal service, publication and posting, and further specifies: ''There shall be posted with such order a notice requiring the owner of agricultural lands within said county to exterminate all such weeds, naming them, on or before the date fixed in such order and there shall be served with said order where the same is personally served a notice directed to the owner of said property in the county requiring them to exterminate such weeds on or before the date fixed in said order.'' Secs. 22–1705, 22–1706 and 22–1707 contain the following provisions:

Sec. 22–1705. ''After the expiration of the time fixed in said order it shall be the duty of the board of county commissioners to proceed at once to destroy all such noxious weeds, mentioned in said order, that still remain growing, in the area named in section 22–1702, and for that purpose they shall have the right, either by them or by their order, to enter upon the premises of another, and they shall have the right to employ such help and purchase such materials as may be necessary to complete eradication and the cost of such additional help, and material used in the eradication together with such other necessary expenses as may be incurred by reason of the necessity of such eradication, shall be paid in the manner provided in section 22–1706. Or in case the labor and materials are used for the eradication of the noxious weeds, defined in said order, on a private right-of-way for an irrigation or drainage ditch, road, or other purposes enjoyed by a person or persons not holding a deed thereto, the cost of such labor and materials, or that part or portion thereof, which is properly assessable to the person

enjoying such right-of-way, or holder of said deed shall be collected immediately in cash, or levied as a tax against the property or properties enjoying the right-of-way. . . . . "

Sec. 22–1706. "The cost of all said extermination and eradication incurred under and by virtue of the provisions of section 22–1705, may, at the option of the board of county commissioners be paid in the following manner: one-half thereof shall be paid from the proceeds of the levy made by the county commissioners of the county in which said weed eradication area is located, and the remaining one-half by the owner, tenant or occupant of the land upon which such weed eradication is made; provided, however, that in case such owner, tenant or occupant of the land upon which such weed eradication is performed desires so to do, his share of such cost and expenditures for such weed eradication may be paid immediately in cash by said owner, tenant or occupant of the land, or in case the same are not paid immediately in cash, the sum shall become a fixed charge against said land, and levied as a tax against the property upon which said weed eradication is performed; . . . . "

Sec. 22–1707. "It is the duty of the board of county commissioners, immediately after the work required by them by this chapter is complete, to render to the county auditor of their county an itemized statement showing in detail total cost of destroying noxious weeds on any pieces of land, railroad or right-of-way in the county on which noxious weeds have been destroyed by them or under their direction, and the county auditor shall, under a proper heading, enter the same on the tax list as a charge against said land or right-of-way and against the owner thereof and the charge shall be collected at the same time and in the same manner as general taxes, and when collected shall be turned into the general county fund."

The direction in the statute that the cost of exterminating weeds shall be levied as a tax against the property on which they were found does not make it a revenue measure. The substance of the law and its purpose must be given consideration in determining the meaning intended by

the legislature in using the words "levied" and "tax." (*Independent School District v. Pfost*, 51 Ida. 240, 4 Pac. (2d) 893, 84 A. L. R. 820; *City of Idaho Falls v. Pfost*, 53 Ida. 247, 23 Pac. (2d) 245.).

The statute here under consideration invokes the police power of the state, not its power to raise revenue. The lien provided for is not to secure revenue, but to enforce payment of expense incurred in the abatement of a nuisance. (*Los Angeles County v. Spencer*, 126 Cal. 670, 59 Pac. 202, 77 Am. St. 217; *Contra Costa County v. Cowell Portland Cement Co.*, 126 Cal. App. 267, 14 Pac. (2d) 606; *Balch v. Glenn*, 85 Kan. 735, 119 Pac. 67, Ann. Cas. 1913A, 406, 43 L. R. A., N. S., 1080.)

Taxes for revenue purpose constitute a superior lien to preexisting contractual encumbrances on property on which they are levied, (*Scottish American M. Co., Ltd., v. Minidoka Co.*, 47 Ida. 33, 272 Pac. 498, 65 A. L. R. 663,) but that rule does not apply to a levy for the purpose of reimbursing a county for the expense of abating a nuisance, so as to make it superior to the lien of a mortgage recorded before steps were taken to abate the nuisance, in the absence of legislative intention, expressed or implied, that the lien of such levy shall be superior to the liens of preexisting encumbrances. (*Guinn v. McReynolds*, 177 Cal. 230, 170 Pac. 421.)

No provision is to be found in the statute that the levy to secure the payment of expense of exterminating noxious weeds shall be a superior lien to that of a preexisting mortgage on the land whereon they are found, nor is that intention to be inferred from anything expressed in the statute. The portion of the decree adjudging that Twin Falls County has a lien superior to appellant's mortgage is reversed.

Givens, C. J., and Budge, Holden and Ailshie, JJ., concur.