Bernard S. BROWN and Aaron A. Paulson, Appellants,

v.

Walter N. TOBRINER et al., Commissioners of the District of Columbia, Appellees.

2501–03 FOURTEENTH STREET COOPERATIVE ASSOCIATION, Appellant,

v.

Walter N. TOBRINER et al., Commissioners of the District of Columbia, Appellees.

Nos. 16860, 16861.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 5, 1962.

Decided Nov. 8, 1962.

Mr. Herman Miller, Washington, D. C., for appellants in No. 16,860.

Mr. Bruce R. Harrison, Washington, D. C., with whom Mrs. Dovey J. Roundtree, Washington, D. C., was on the brief, for appellant in No. 16,861.

Mr. John R. Hess, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellees.

Before FAHY, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

These are appeals from a judgment for $24,000 in favor of appellees [defendants in the District Court]. The litigation stems from a fire which extensively damaged a cooperative apartment building located at 2501–03 Fourteenth Street, N. W., on March 7, 1958.

After an inspection by the Director of the Department of Licenses and Inspections (the inspector of buildings), the appellant in No. 16,861, 2501–03 Fourteenth Street, N. W. Cooperative Association, owner of the apartment, was ordered on March 10, 1958, to raze the building to make the area safe and was allowed until noon of March 11, 1958, to commence removal of the unsafe structure. This action was taken pursuant to Title 5, § 501, D.C.Code (1961).[1] When

---

1. Title 5, §§ 501, 502 and 503, the sections of the D.C.Code involved in this case, are here reproduced:

"5–501. *Structure reported unsafe, to be examined by inspector of buildings —If unsafe, notice to be given to make*

the contractor for the removal of the building failed to have the necessary equipment on the site on March 11, the Cooperative's permit to raze was cancel-

*same secure—If safety requires, inspector may make secure.*

"If in the District of Columbia any building or part of a building, staging, or other structure, or anything attached to or connected with any building or other structure or excavation, shall, from any cause, be reported unsafe, the inspector of buildings shall examine such structure or excavation, and if, in his opinion, the same be unsafe, he shall immediately notify the owner, agent, or other persons having an interest in said structure or excavation, to cause the same to be made safe and secure, or that the same be removed, as may be necessary. The person or persons so notified shall be allowed until 12 o'clock noon of the day following the service of such notice in which to commence the securing or removal of the same; and he or they shall employ sufficient labor to remove or secure the said building or excavation as expeditiously as can be done; *Provided, however,* That in a case where the public safety requires immediate action the inspector of buildings may enter upon the premises, with such workmen and assistants as may be necessary, and cause the said unsafe structure or excavation to be shored up, taken down, or otherwise secured without delay, and a proper fence or boarding to be put up for the protection of passersby. (Mar. 1, 1899, 30 Stat. 923, ch. 323, § 1; Apr. 5, 1935, 49 Stat. 105, ch. 41.)

"5-502. *If dangers not remedied, premises to be surveyed by three disinterested persons—Report.*

"When the public safety does not, in the judgment of the inspector of buildings, demand immediate action, if the owner, agent, or other party interested in said unsafe structure or excavation, having been notified, shall refuse or neglect to comply with the requirements of said notice within the time specified, then a careful survey of the premises shall be made by three disinterested persons, one to be appointed by the commissioners of the District of Columbia, one by the owner or other person interested, and the third to be chosen by these two, and the report of said survey shall be reduced to writing, and a copy served upon the owner or other interested party; and if said owner or other interested party refuse or neglect to appoint a member of said board of survey within the time specified in said notice, then the survey shall be made by the inspector of buildings and the person chosen by the commissioners, and in case of disagreement they shall choose a third person, and the determination of a majority of the three so chosen shall be final. (Mar. 1, 1899, 30 Stat. 923, ch. 323, § 2; Apr. 5, 1935, 49 Stat. 106, ch. 41, § 2.)

"5-503. *Inspector of buildings to make structure safe if responsible person does not—Cost and expense—How assessed—Neglect of lessee—Rights of lessor.*

"Whenever the report of any such survey shall declare the structure or excavation to be unsafe, or shall state that structural repairs should be made in order to place the said structure or excavation in a fit condition for further occupancy or use, and the owner or other interested person shall for ten days neglect or refuse to cause such structure or excavation to be taken down or otherwise to be made safe, the inspector of buildings shall proceed to make such structure or excavation safe or remove the same. After the expiration of the ten days in which the owner or other interested person is given to make the structure or excavation safe, or to be taken down or removed, the owner or other interested person, having failed to comply with the provision of the report of the board of survey, shall not enter, or cause to be entered, the premises for the purpose of making the repairs ordered, or razing the building, as the case may be; or in any other way to interfere with the authorized agents of the District of Columbia in making the said structure or excavation safe, or in removing same, without first having obtained the written consent of the commissioners of the District of Columbia or their duly authorized representatives. The inspector of buildings shall report the cost and expense of said work to the commissioners of the said District, who shall assess the amount thereof upon the lot or ground whereon such structure or excavation stands, or stood, or was dug, and unless the said assessment is paid within ninety days from the service of notice thereof on the agent or owner of such property, the same shall bear interest at the rate of 10 per centum per annum from the date of such assessment until paid, and shall be collected as general taxes are collected in said District; but said assessment shall be without prejudice to the right which the owner may have to recover from any lessee or other person liable for repairs. (Mar. 1, 1899, 30 Stat. 923, ch. 323, § 3; Apr. 5, 1935, 49 Stat. 106, ch. 41, § 3.)"

led and a permit to raze was issued by appellees to A & A Wrecking Company, the low bidder for the work, which proceeded to remove the remaining portions of the building. The Wrecking Company was paid $24,000 for its work by appellees, which the trial court found was a reasonable fee for the job.

Appellant Cooperative filed this proceeding in the District Court, seeking a judgment "declaring the rights of [appellant] and that the costs of razing [appellant's] structure be paid by [appellees], and/or that no valid inchoate lien exists," and praying the court to restrain appellees "from placing a lien against the * * * property in any amount," and for damages in the amount of $24,000.

Brown and Paulson intervened in the proceeding, seeking a judgment against the Cooperative in the amount of $21,-691.62, with interest, for the balance of their note secured by deed of trust on the property, and for a declaration of priority over both the Cooperative Association and appellees. Appellees counterclaimed for $24,000, the amount the District of Columbia had paid the Wrecking Company, and asserted a lien against the property or the proceeds of the sale thereof.[2]

The District Court made findings of fact and conclusions of law, and entered judgment for appellees on all claims.

### Appeal No. 16,680

In this case, the initial contention of appellants, Brown and Paulson, is that the District of Columbia is not entitled to reimbursement for the expense incurred in razing the residue of the apartment building. They argue that the sole provisions for reimbursement to the District are contained in Title 5, § 503,[3] of the code and that that section refers only to razing undertaken under the provisions of Title 5, § 502.[4] Admittedly

in this case, appellees proceeded under the provisions of § 501, because the structure was considered so unsafe that immediate action was necessary, and not under § 502, which prescribes the steps the District must take preparatory to razing, if the building is not so unsafe that immediate action is required.

If appellants' reading of § 503 were correct, we would be faced with an anomalous situation, namely, that the District is to be reimbursed if it razes structures which are not so dangerous as to require immediate demolition but is not to be reimbursed if it razes structures which are so dangerous as to make immediate destruction necessary. Counsel have offered no reason why this distinction should exist and we have found none ourselves.

In fact, reason suggests the contrary. Under § 501, the District undertakes to raze a building only after the owner has failed to fulfill his duty to have it torn down himself. If the District had no means of obtaining reimbursement, there would be little pressure on the owner to meet his obligation. Admittedly, § 503 provides reimbursement to the District if the owner of a building not so unsafe as to require immediate razing fails to take it down after ten days from the time the demolition was recommended by a report of survey. It would be unreasonable to permit the District recovery in such a case and not to permit recovery when the owner of a building so unsafe that it needs immediate razing fails to fulfill his obligation to remove the structure.

■ Further, it seems very clear that the last sentence of § 503, which provides for reimbursement to the District for monies expended in razing unsafe structures, applies whether the structure was razed under the provisions of § 501 or § 502. That sentence of § 503 appears to be a general remedial provision not

---

2. It appears that, prior to trial, the property in question was sold to a third party and the proceeds of the sale, $25,000, were deposited in the Registry of the court.

3. Note 1, supra.

4. Ibid.

confined to § 502 undertakings. We believe that Congress intended the provisions for reimbursement to apply to both § 501 and § 502. Any other interpretation would lead to absurd consequences, and it is an elementary principle of statutory construction that statutes should not be so interpreted.

 Finally, appellants assert that, even if the District is entitled to reimbursement, it is not entitled to priority over their notes secured by a prior recorded second deed of trust on the property. The trial court found, however, that no true mortgagor-mortgagee relationship existed between Brown and Paulson on the one hand and the Cooperative on the other, since their interests were not shown to be separate and distinct. Examination of the record convinces us that this conclusion of the trial court should not be disturbed. The court had evidence that the arrangement between appellants and the occupants of the apartment building was that of landlord and tenant rather than mortgagor and mortgagee. The occupants received no certificates of ownership. Failure of an occupant to make payment resulted not in foreclosure but in proceedings before the Landlord and Tenant Branch of the Municipal Court. Appellants apparently retained any surplus after expenses from the monthly payments they received, although these payments exceeded those specified by the notes.

There was also evidence that appellants controlled the Cooperative Association. Brown and Paulson, along with their wives and a third party, were its founders. Brown's wife and Paulson were its first President and Secretary, respectively. Appellants remained on the Board of Directors until shortly before the fire, although they owned no apartment in the building. There is also testimony that, after their resignation from the Board, appellants remained the guiding force of the Cooperative Association, as they had been before.

Considering these facts, we feel that the District Court was justified in concluding that there was no true mortgagor-mortgagee relationship between appellants and the Cooperative Association. Certainly its finding on this point was not "clearly erroneous." [5] Under these circumstances, appellants are not entitled to a priority.

*Appeal No. 16,861*

For the reasons stated in Appeal No. 16,860, the claim of appellant in this appeal must be denied. Appellees proceeded in accordance with the proper code provisions and are entitled to reimbursement for the amount expended to raze the structure.

No. 16,860 is affirmed.

No. 16,861 is affirmed.