**LOCAL BOARD OF HEALTH, BOONE COUNTY, Iowa, et al., Appellees,**

v.

**Mr. Lloyd C. WOOD et al., Appellants.**

No. 57202.

Supreme Court of Iowa.

June 30, 1976.

Norman G. Jesse, Des Moines, for appellants.

Wallace L. Taylor, Boone, for appellees.

Heard before REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES and HARRIS, JJ.

MASON, Justice.

This appeal by defendant landowners is another stage in a drawn out series of negotiations and district court decrees bearing upon what was determined to be a public nuisance by the Boone County Board of Health. Beginning in 1960 the Board has attempted to deal with the problem of accumulated junk on defendants' properties. In the last of four decrees, District Judge Newt Draheim quite understandably noted the public's interest in seeing an end to litigation.

In equity matters, such as this, where our review is de novo, rule 334, Rules of Civil Procedure, it is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. *In Re Marriage of Jennerjohn,* 203 N.W.2d 237, 240 (Iowa 1972).

The appendix, though rather sketchy, indicates work was commenced in 1969 to abate a public nuisance on land owned by defendants Mr. and Mrs. Lloyd C. Wood and Mr. and Mrs. Leonard Wood. The actual work was done under the County Engineer's supervision by the secondary road crew and two electrical contractors at the direction of plaintiff Board of Health.

As stated, three district court decrees were issued prior to one contested in the instant appeal. The first was entered October 22, 1969, by Judge Edward J. Flattery. It was concluded in that decree the conditions on defendants' property constituted a public nuisance to be abated by proper local authorities. The Board of Supervisors was authorized to remove or bury the debris and junk by means approved by the Board of Health, and the costs of this were to be certified to the County Auditor, entered upon the tax books and collected in the same manner as other taxes.

The second, an amended decree, was entered May 10, 1971, by Judge Mark McCormick (now Justice). It provided in relevant part that plaintiff Board should carry out the terms of the decree and have the authority to sell any items of value with the proceeds to be credited defendants against the costs of abatement. The court also retained "jurisdiction as to the amount of costs of abatement which will be assessed against defendants."

The third decree, filed October 26, 1971, provided "Lot Two (2)" be cleared of all materials except such things as iron and metal permissible in a junkyard. A "brickyard" was to meet all requirements for a junkyard as defined by the rules of the Board of Health and defendants were then to be granted a junkyard license "if they so qualify." The court ruled, however, if these steps were not taken by December 31, 1971, the county had the power to remove and bury specified items. Again, jurisdiction as to abatement costs to be assessed against defendants was retained.

September 10, 1973, plaintiff Board applied for a supplemental decree for permission to move materials from the brickyard to the landfill area since defendants had not and apparently never would qualify themselves for a junkyard license. It was also requested costs be assessed against defendants for abatement of the nuisance.

Defendants disputed the power of the court to enter such a decree since the prior decrees retained jurisdiction only as to costs. It was further contended "the time for filing a petition to correct, vacate or modify a final judgment pursuant to R.C.P. 252 and R.C.P. 253 has long since expired, and the Court is therefore without jurisdiction to grant the relief prayed for in such Application, or any relief whatsoever."

At commencement of the hearing defendants' attorney moved to dismiss the Board's application pursuant to rule 215.1, R.C.P., and to vacate the two 1971 decrees for the reasons the court did not retain jurisdiction and that this case should have been dismissed on February 19, 1970.

In the supplemental decree's conclusions of law, Judge Draheim ruled the court possessed jurisdiction of the parties and subject matter, noting the fact jurisdiction of the person may be attacked only by special appearance and that a general appearance confers personal jurisdiction. It was also concluded rule 215.1, R.C.P., provides for dismissal of an action for want of prosecution, whereas this matter had been tried several times. Finally, the court noted the right of appeal is lost under rule 335 if not taken 30 days after entry of a decree or if the parties "consent to Order or the rendition of the Judgment or Decree in question."

I. On appeal, defendants reassert their arguments in relation to rules 252 and 253, R.C.P., and state there exists no power on the part of the trial court to issue a "supplemental decree."

It should be noted at the outset Judge Draheim *denied* plaintiffs' application for a supplemental decree. Rather, the prior decrees were set forth and interpreted. The final order contained nothing new. Significantly, the court stated:

"The Decree of October 22, 1971, states that any of such materials kept for use by the Defendants or for a junkyard shall be placed in an area known as 'the brickyard', according to the rules of the Local Board of Health. It further states that it is the intention of this Court that said area known as 'the brickyard' meet all the requirements and specifications for a junkyard as defined by the rules of the Local Board of Health, and that the Defendants will be permitted a license for a junkyard if they so *qualify*, and the brickyard be cleared of all things except those permitted by the rules of the Board of Health for junkyards on or before December 31, 1971. The Decree further states that in the event any of the foregoing have *not been completed* by December 31, 1971, the county officers including County Board of Supervisors and the county engineer shall forthwith have full power and authority to *remove* and *bury*, in the area previously established as a land fill area, all items specified to be *moved* or *destroyed*. This means the brickyard items are to be removed or buried if they do not qualify for junkyard inventory by December 31, 1971.

"Since the Defendants did not qualify for a junkyard license by December 31, 1971, it is quite clear from the prior Decrees that Plaintiffs are to either sell, remove or bury the items or things constituting the nuisance; therefore, the iron and metal in the 'brickyard' should first be sold. If not sold, then removed or buried on the premises. * * *." (Emphasis in original).

 Judge Draheim drew only from the prior decrees in making the above statements. It cannot logically be argued his construction of those decrees was unreasonable or arbitrary. "A decree is to be construed like other written instruments; the determining factor is the intention of the court as gathered from all parts of the judgment. Effect must be given to that which is clearly *implied* as well as to that which is expressed. * * * [citing authorities]." *Rinehart v. State*, 234 N.W.2d

649, 656 (Iowa 1975). (Emphasis in the original).

■ Thus apparent is the fact defendants' contentions concerning the power to "modify" or to "change" prior decrees are not on point. The final decree merely restated what plaintiffs *already had a right to do.* No powers were added or taken away. Therefore, defendants' reliance upon rules 252 and 253, R.C.P., dealing with correction, vacation or modification of a final judgment or order is misplaced. Likewise, rule 215.1, R.C.P., which concerns dismissal of a suit for want of prosecution is obviously inapplicable.

The trial court noted plaintiffs "are quite cautious and prefer direction on matters fully within their powers and authority." Due to the decrees prior to the one in issue here, there is substantial support for this finding. No new decree was rendered which "granted any relief except to assess the costs of abatement."

What is more, this court has stated the rule is well settled that, " ' * * * where a court of equity obtains jurisdiction of a cause, it will retain it until all questions involved in the case are adjudicated, doing complete justice between the parties. This rule applied fully justified the settlement of all controversies growing out of the main case between the parties, and there was no error in this action of the court.' " *Donnelly v. Nolan*, 235 Iowa 30, 33, 15 N.W.2d 924, 926. See also *Lovrien v. Fitzgerald*, 245 Iowa 1325, 1328, 66 N.W.2d 458, 460 and *Greenstreet v. Clark*, 239 N.W.2d 143, 148 (Iowa 1976).

■ Although it is true the preceding decrees retained specific jurisdiction only as to costs of abatement, the above statement of the law is not couched in terms of the court retaining jurisdiction. Rather, jurisdiction in equity is retained until "all questions" are adjudicated and complete justice done between the parties.

We conclude the trial court possessed power to *construe* the prior decrees. Since this construction is entirely reasonable, when read in light of the prior decrees, the trial court did not commit error.

II. The other question presented concerns the trial court's ruling the costs of abatement were "reasonable and necessary." As such, the court ordered these costs certified by the Board of Health to the County Auditor who in turn was to enter the charges upon the tax books and collect them in the same manner as other taxes, as was provided in the first decree.

The power of the Board to remove a nuisance and to collect the costs thereof from the landowner is not disputed. Section 137.6(2), The Code, empowers local boards of health to "make and enforce such reasonable rules and regulations not inconsistent with law or with the rules of the state board as may be necessary for the protection and improvement of the public health."

Pursuant to this power, "Regulation III Junk" was enacted, which allows the local board to abate a nuisance if the owner of land does not himself after notice and opportunity to be heard remove the refuse or junk. "All expenses incurred by the local board in proceeding to abate a nuisance may be recovered by suit in the name of the local board, or said board may certify the amount of said expenses, together with a description of the property, to the county auditor who shall enter the same upon the tax books as costs for removing a nuisance and said amount shall be collected as other taxes."

In 58 Am.Jur.2d, Nuisances, section 207, pages 807–808, the editors note:

"The public authorities may summarily enter upon real estate and remedy conditions which endanger the public health, and may require the owner of the property to pay the expenses thus incurred; and the state may, in the exercise of its police power, provide by statute that the cost of abating a nuisance shall be assessed against the property of the owner by whom it is maintained, without regard to whether or not the owner derives any benefit therefrom. The owner is afforded due process of law in such cases where provision is made for am-

ple notice to him, and he then has an opportunity to have a hearing in a court of competent jurisdiction before any lien is created on his property. The cost of the proceedings is not a tax, although the statute refers to it as a tax to be collected as other taxes are collected, but is merely the expense of abating a nuisance. * * *."

Cases which lend support to this statement in whole or in part include *Brown v. Tobriner*, 144 U.S.App.D.C. 94, 312 F.2d 334; *Lacy v. City of Des Moines*, 253 Iowa 621, 625–626, 113 N.W.2d 279, 281–282; *Bond v. City of Moss Point*, 240 So.2d 270 (Miss.1970); *City of Nashville v. Weakley*, 170 Tenn. 278, 95 S.W.2d 37, 39; *Contra Costa County v. Cowell Portland Cement Co.*, 126 Cal.App. 267, 14 P.2d 606, 609. See generally 43 A.L.R.3d 916 and 66 C.J.S. Nuisances § 138, page 945.

What is in dispute, however, is the showing of the reasonableness and necessity of the costs of abatement. In this regard, defendants attack both an exhibit and testimony.

Exhibit 2 was a copy of a statement of costs incurred by Boone County to abate the nuisance on the Wood property. It was prepared by the County Auditor and included costs for equipment rental, labor of the secondary road crew and wiring charges for work contracted to Chuck's Electric Service of Boone and Iowa Electric Light and Power Company.

The testimony attacked here is that of Dr. Walter G. Dennert, member of the Board of Health and "chairman for the work done" on the Wood land. As chairman Dennert dropped by the site frequently and was available for questions. Specific supervision, however, was left to the County Engineer after being told by Dennert what was to be accomplished.

It was adduced Dennert himself did not keep track of equipment costs or manhours. By the same token, he did not prepare the exhibit, nor was he present when the auditor prepared it. Perhaps most important, Dennert could not testify as to the reasonableness of the specific dollar amounts although he had done "some con-struction" and therefore had an idea of what things in the construction field cost. Since the work listed on the bill, however, had in fact been accomplished, the Board paid it.

Counsel for defendants strenuously objected to the admission into evidence of exhibit 2 and testimony thereon based upon grounds of hearsay, lack of proper foundation, the best evidence rule, and incompetency, irrelevancy and immateriality. Furthermore, it was asserted the defense could not adequately "cross-examine this exhibit or any witness with respect to the values of amounts stated in the exhibit." On appeal, defendants' arguments are based upon the propositions Dennert lacked personal knowledge and that exhibit 2 did not constitute the best evidence.

Plaintiffs, of course, contend reversible error does not exist. They point out Dennert possessed knowledge (1) of funds expended by the *Board* (presumably from the Board's payment of the auditor's bill), (2) that the work was done as he directed, (3) the work was necessary to comply with court order, and (4) of the reasonableness of the bill due to his possession of "some knowledge" of construction costs.

It is also argued by plaintiffs the Board's payment of the bill constitutes some evidence of the value of the work accomplished. Furthermore, analogy is drawn between a government's abatement of a nuisance and the levy of special assessments for improvements, where "a governmental body is presumed to make improvements in the most efficient and reasonable manner." Finally, plaintiffs assert the fact exhibit 2 was a photostatic copy does not constitute reversible error, i. e., that any error was harmless.

■ An initial matter to be analyzed is the question raised during oral argument before this court whether defense counsel requested a ruling on his in-trial objections. It is apparent no request was made, nor were the objections ruled upon. In a law action this failure would be fatal. See *Dougherty v. Sioux City*, 246 Iowa 171, 195–196, 66 N.W.2d 275, 288.

The trial here proceeded after the manner and practice which have become usual in equity cases in this jurisdiction; that is, while counsel on either side exercised to the limit their right to make all conceivable objections to each item of evidence and their objections were duly noted in the record, the court did not rule thereon at the time, nor were such rulings demanded or entered at the close of the trial.

In an equitable proceeding, as here, the rules are such that the trial judge, while noting objections, may not ordinarily exclude offered testimony. The purpose is to preserve a complete record of the evidence for the trial and appellate courts, leaving to them the rejection of inadmissible evidence in deciding the issues. See *In Re Scarlett*, 231 N.W.2d 8, 10 (Iowa 1975) and *O'Dell v. O'Dell*, 238 Iowa 434, 465, 26 N.W.2d 401, 417.

Hence, so long as objections are made and noted in the record in equity actions, error as such is preserved. Yet it still must be determined whether defendants' in-trial objections adequately raised the arguments presented here.

While it is clear the bald assertions evidence is "incompetent" or has "no proper foundation" lack in specificity, see *State v. Clay*, 213 N.W.2d 473, 477 (Iowa 1973) and *U. S. Homes, Inc. v. Yates*, 174 N.W.2d 402, 405 (Iowa 1970), these assertions, viewed in connection with the hearsay and inability to cross-examine contentions as well as a reading of the record as a whole point to counsel's intention to argue Dennert did not possess firsthand or personal knowledge of the reasonableness or value of the services provided by the county.

The hearsay objection itself may have been sufficient to raise this issue. In *State v. Gray*, 239 N.W.2d 584, 587 (Iowa 1976), this court quoted from McCormick on Evidence, (Second Ed.), section 247, pages 586–587, where it is noted the concepts of hearsay and firsthand knowledge are distinguishable, but that " * * * when it appears, either from the phrasing of his testimony or from other sources, that the witness is testifying on the basis of reports from others, though he does not in terms testify to their statements, the distinction loses much of its significance, and courts may simply apply the label 'hearsay.' * * * ."

The court in *Gray* then noted our cases seem to adopt the foregoing view and held the hearsay objection there was sufficient to raise the question of firsthand knowledge. It is quite obvious, as stated, counsel was questioning Dennert's possession of knowledge of the reasonableness of the charges set forth in exhibit 2.

The issue as to the admissibility of both the exhibit and the testimony of Dr. Dennert was properly preserved in the trial court for review in this court.

III. As noted, plaintiffs argue there should exist some sort of presumption of reasonableness of expenditures by a governmental body in abating a nuisance. The reasoning which would support such a distinction between the value of services by the government and such value by a private concern remains unclear. This is not surprising since a reason for such distinction would be rather difficult to frame.

This court has noted where a private party abates a nuisance, " * * * the special damages which may be allowed include *reasonable* costs attendant upon removal of offensive nuisance deposits. * * * [citing authorities]." (Emphasis supplied). Furthermore, " * * * plaintiffs [abaters] were required to establish their claim with some reasonable measure of certainty and show facts affording a reasonable basis upon which their damages could be ascertained. * * * [citing authorities]." *Earl v. Clark*, 219 N.W.2d 487, 490 (Iowa 1974).

Logical basis for the conclusion a governmental body should not be required to show the reasonableness of its expenses in abating a nuisance does not exist. Because of this, there is good reason research does not reveal nor do plaintiffs cite a case on point.

Plaintiffs initially argue the fact the Board paid the bill to the auditor is some

evidence of reasonableness. In the area of automobile repair bills, payment thereof is some evidence of reasonableness, and " ' * * * generally a bill for repairs may be admitted to prove the reasonable cost, when there is evidence showing that the repairs indicated by the bill were necessary, that the items contained therein are correct, and that the charges therefor are just, proper, and reasonable, but not in the absence thereof.' 25A C.J.S. Damages § 157b(1)." *Harlan v. Passot*, 260 Iowa 501, 507, 150 N.W.2d 87, 91. See also *Stanley v. State*, 197 N.W.2d 599, 606–607 (Iowa 1972), a case dealing with medical and hospital expenses.

Here, however, the evidence indicates one branch of county government "paid" a certain amount to another branch of county government. This is hardly a situation involving anything resembling the "open market." In other words, it would seem the only reason a paid automobile repair bill is some evidence of reasonableness is because of *competition*. The person wishing his vehicle to be repaired will normally have a choice between competing shops. And because of this competition, prices will be as reasonable as possible (barring price fixing, of course).

The Vermont court has touched upon this problem. In *T. O. Metcalf Company v. Crossroads, Inc.*, 121 Vt. 147, 151 A.2d 307, 311–312, it was stated:

" * * * It has been held that sums so paid bear on the reasonable value of the total services rendered. * * * [citing authority]. A purchase *in the open market* is somewhat of a guarantee of fair value. One of the items of this kind entering into the plaintiff's bill is the sum of $5,892.04 which was paid to the Williamson Offset Company. Now it appears in the evidence that the president of the plaintiff is president of the Williamson Offset Company and that both companies have the same address and operate under the same roof. As to this item, the amount which the plaintiff had to expend was established not by two independent concerns bargaining with one another, but by a single president bargaining with himself in two different capacities. We can not extend to a situation of this sort the benefit of the rule obtaining where there is an open market transaction. It takes fair and reasonable testimony to establish fair and reasonable value. It was incumbent on the plaintiff in these circumstances to introduce something else in the way of evidence fairly tending to show that such expenditure was reasonable. * * * [citing authority]." (Emphasis supplied).

■ In light of the dispute as to the sufficiency of the showing of the reasonableness and necessity of the costs of abatement which plaintiffs seek to assess against defendants it is the opinion of this court mere payment of the bill—exhibit 2—by plaintiffs standing alone is not sufficient to warrant assessment of the amount claimed. It was incumbent upon plaintiffs to offer some additional evidence tending to establish that the charges made were necessary and reasonable in abating the nuisance as directed by the court's decree.

■ Plaintiffs must rely solely on the testimony of Dr. Dennert to sustain this burden since no other testimony was offered. The value and necessity of the services performed by the county was a proper subject for opinion testimony by a qualified witness. *Talley-Corbett Box Company v. Royals*, 134 Ga.App. 769, 216 S.E.2d 358, 359. This presents defendants' challenge to Dennert's testimony based on the contention he did not possess firsthand or personal knowledge of the reasonableness or necessity of the services provided by the county.

■ This court has of course been committed to a liberal standard of admission of "opinion" evidence since the landmark case of *Grismore v. Consolidated Products Co.*, 232 Iowa 328, 5 N.W.2d 646, was handed down in 1942. This liberality, however, does not mean a witness need not be *qualified* to express an opinion. Professor Wigmore states:

"Observation of the matters to be testified to is an essential conception in the qualifications of every witness without exception (ante, § 478). By Observation is

meant that direction of attention which is the source of impressions, and thus of knowledge. The distinction between Experience (ante, § 558) and Observation is that the former concerns the mental *power* or capacity to acquire knowledge on the subject of testimony, while the latter concerns the *actual exercise* of the intelligence upon the subject of testimony. Admission as a witness is inconceivable without the presence of both these elements.

"It is true that the distinction between Experience and Observation is sometimes lost sight of in the practical tests applicable to certain subjects of testimony. For example, when a Court adopts the rule of thumb that farmers in the vicinity of a certain piece of land may testify to its value, it is ruling upon both these subjects; it is ruling that farmers are persons of sufficient experiential qualifications, and it is also ruling that persons in the vicinity have sufficient observation or knowledge of the general class of values in question and of the piece of land in question. * * *." 2 Wigmore on Evidence, (Third Ed.), section 651, page 756. (Emphasis in original).

■■■ In effect, the foregoing expresses the idea a witness must be competent, i. e., qualified here to express an opinion. This court has recently touched upon competency in the following manner:

" * * * In determining whether a witness is to be excluded because of a lack of testimonial qualification three processes are involved: First, it must be determined whether the witness *has observed the incident* about which he proposes to testify and has received some impressions which he seeks to relate in court; second, whether the witness has a recollection of those impressions resulting from his observation which fairly corresponds with or reproduces the original knowledge or observation; and third, whether he is able to communicate this recollection to the tribunal. In the absence of any one of these elements the witness's testimony cannot be believed. * * *. (Emphasis supplied).

"*Wigmore* tells us there is * * * [one form of] incapacity which involves 'a lack of power to judge rightly on particular subjects, and arising from lack of *experience* or training. This incapacity extends to particular topics only, not necessary to the whole subject of litigation.' (Emphasis in original). * * *." *State v. Harvey*, 242 N.W.2d 330, 335 (Iowa 1976).

Thus, *Wigmore*, in line with what has just been stated, notes that a person making an estimate as to " * * * value, must possess a double knowledge,—(1) a knowledge of the classes into one of which the thing is to be put or the standard by which it is to be tested, and (2) a knowledge of the thing itself to be classed or measured or tested. The necessity of this double element of knowledge lies in the very nature of the mental process involved. * * *." 3 *Wigmore*, section 720, page 54.

It should be noted hypothetical questions are not here involved. Thus, it is apparent Dr. Dennert must have been sufficiently familiar with the commercial value of the services performed by the county engineer. In this regard, in an article entitled "Opinion Evidence in Iowa," 19 Drake L.Rev. 245, 252 (1970), Judge Mark McCormick (now Justice) noted this sort of nonexpert opinion is " * * * generally permitted where three conditions are met: (1) the witness has made observations of specific events or conditions; (2) he has sufficient intelligence to draw proper inferences from such observations; and (3) such opinions from special knowledge will assist the jury more than if the witness were limited to the specific detail. Thus, nonexpert witnesses may testify to opinions based upon ordinary judgment from special knowledge through common observation of specific events or conditions. This is in keeping with the modern view that opinions which will assist the jury should be admitted."

The Maine court has aptly stated:

" 'The opinion, if not based upon his own firsthand observation, should at least be grounded upon facts supplied by others for which there is support in the evidence. Unless the factual foundation which underlies the opinion is known and subject to the test

of cross-examination, it is virtually impossible to conduct intelligent and effective cross-examination as to the opinion itself.' *Brouillette v. Weymouth Shoes Company*, 1961, 157 Me. 143, 170 A.2d 412, 413." *Ginn v. Penobscot Company*, 334 A.2d 874, 887 (Me.1975).

■ The county engineer and foreman supervised the work actually done. Dr. Dennert knew *what* he wanted accomplished, but not being an engineer, left it to the county engineer to determine the best means by which to abate the nuisance. While Dennert knew the auditor's bill was prepared on a machine and per-man hourly cost, he did not intend to testify machine rental and labor costs were a certain amount of dollars per hour. Dennert neither kept track of man-hours, nor was he the laborers' "boss." A reading of the testimony indicates that in effect the witness thought the charges were reasonable simply because the county presented a bill which the Board paid.

The testimony does not in any way indicate just what actions the county engineer took to abate; thus, there is nothing upon which to base a conclusion everything done was *necessary*. Nothing actually shows the labor and machine costs were reasonable either.

As indicated, our review in this equitable proceeding has been de novo. In this connection we have studied the trial transcript of Dr. Dennert's testimony and conclude he was not properly qualified in accordance with the principles of law recognized in the foregoing authorities to furnish the supporting testimony required to establish that the services performed by the county as evidenced by exhibit 2 were necessary to abate the nuisance or that the costs thereof were just and reasonable. Consequently, the assessment cannot stand.

"In *Kossuth County State Bank v. Richardson*, 141 Iowa 738, 741, 118 N.W. 906, 907, we said:

" 'Ordinarily a reversal upon hearing de novo terminates the litigation, the opinion indicating the character of decree to be entered; but, whenever essential to effectuate justice, an appellate tribunal may remand to the trial court for such further proceedings as the circumstances of the particular case require. * * * [citing authorities].' " *Hansen v. Kaperonis*, 243 Iowa 1257, 1265, 55 N.W.2d 284, 288.

■ IV. In a new hearing two matters will undoubtedly rearise. Should plaintiffs seek to rely upon exhibit 2, the original should if possible be produced. McCormick on Evidence, (Second Ed.), section 230, page 560, has this statement:

"The specific context in which it is generally agreed that the best evidence principle is applicable today should be definitely stated and its limits clearly defined. The rule is this: in proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent."

Of course, nothing would prevent admission of competent testimony bearing upon costs without this exhibit. This court has stated:

"Rule of best evidence obtainable is expressly, if not solely, applicable to documentary evidence, *Daniels v. Bloomquist*, 258 Iowa 301, 312, 138 N.W.2d 868, 875, and has no application where the fact to be proved is independent of any writing even though the fact has been reduced to a writing or is evidenced by a writing. 2 Jones on Evidence (Sixth Ed., Gard), Section 7:4. See also 4 Wigmore on Evidence (Chadbourn Rev.), section 1174." *Schiltz v. Cullen-Schiltz & Assoc., Inc.*, 228 N.W.2d 10, 19–20 (Iowa 1975). See also *State v. Schlenker*, 234 N.W.2d 142, 145 (Iowa 1975).

Likewise, defendants argue the costs were not apportioned between the two lots. Dr. Dennert testified plaintiffs shifted ownership of portions of their land back and forth between them so that from one time to another he did not know who owned what. It is also discernible from the record defendants may have deliberately tried to confuse the county in this respect.

Significantly, it appears the nuisance itself belonged jointly to defendants. In their resistance to the application for a supplemental decree, defendants stated they had twice applied for a "junk dealers license." Apparently they wished to go into business *together* and their mutual accumulation of junk was obviously in furtherance of this end.

Defendants' procrastination in the face of a court decree's determination the state of their property constituted a nuisance should not be commended. It would be contrary to the principles of equity to conclude, under these particular facts, the county cannot recover because the costs of abatement may not be capable of apportionment between defendants' separate properties. Since their creation of the nuisance was an apparent mutual effort, defendants' liability for abatement thereof should likewise be mutual.

" ' "Wherever a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation, though no similar relief has been given before." (Citations).' " *Braverman v. Eicher*, 238 N.W.2d 331, 335 (Iowa 1976).

Since the equities of this case demand defendants should not easily avoid payment for abatement of the nuisance on their property the matter is remanded for hearing to afford plaintiffs the opportunity to prove the necessity of the services performed in abating such nuisance and to the reasonableness of the charges therefor.

With directions to the trial court to afford the parties a prompt hearing limited to the two issues just stated, the case is reversed and remanded with directions. Costs of this appeal are taxed to appellees.

REVERSED AND REMANDED WITH DIRECTIONS.